Delano A. KEPLER, et al.,
Plaintiffs/Appellants,

v.

KORDEL, INC., Respondent.

No. C5–95–1469.

Court of Appeals of Minnesota.

Jan. 30, 1996.

Review Denied March 19, 1996.

Joseph J. Roby, Jr., Sally L. Tarnowski, Johnson, Killen, Thibodeau & Seiler, Duluth, for appellants.

Patrick J. Roche, Mark A. Muhich, The Trenti Law Firm, Virginia, for respondent.

Considered and decided by SCHUMACHER, P.J., TOUSSAINT, C.J., and HUSPENI, J.

## OPINION

TOUSSAINT, Chief Judge.

In this appeal from a district court judgment, Delano and Brenda Kepler argue that the district court erred by determining that their discharges were not prohibited by the Minnesota Human Rights Act.

## FACTS

Kordel is a corporation that operates numerous retail stores, including an Ace Hardware store in Hibbing. Delano Kepler began working at that store in 1960. He became the store manager in 1985 and served in that capacity until his termination on May 17, 1993. Kepler married Brenda Kepler in 1990. From 1983 to 1988 she was a full-time employee of the store. Brenda Kepler ended her employment in 1988 in order to attend college. However, she still attended buying shows and conventions on behalf of Ace Hardware.

Ace Hardware stated in its employment manual that relatives may not work in the same store. Kepler was unaware of the policy and hired his wife to be a buyer at conventions on three different occasions. Following the third convention, in the fall of 1992, Kordel informed Kepler of the policy and told him not to hire any relatives in the future. Kepler did not follow this directive and made arrangements to hire his wife again for a convention in St. Louis in the spring of 1993. In a meeting on or about April 1, 1993, Kepler stated that if his wife could not go to the convention, he would not attend either. Neither attended the St. Louis convention.

Ace Hardware sponsors conventions twice a year that provide employees with product line information and opportunities for them to attend meetings and seminars. The main purpose of these conventions is to provide instruction and education to Ace Hardware employees.

During the course of Kepler's employment as manager, Kordel expressed many concerns about his performance. Kordel was dissatisfied with the store's inventory levels and Kepler's resistance to Kordel's directive concerning the store's direction. On May 17, 1993, Kordel fired Kepler. In a letter dated May 24, 1993, Kordel noted that the reason for Kepler's termination was unsatisfactory work performance. Kordel referred to past communications concerning "company policy and inventory levels" and stated that Kepler had disregarded, did not enforce, or failed to follow company policy, direction, and instruction. The district court, determined that Kepler's attempt to hire his wife for conventions was not a factor in his firing. Following Kepler's discharge, Kordel discontinued Brenda Kepler's position with the store.

Kepler claims that his firing was marital status discrimination prohibited by the Minnesota Human Rights Act (MHRA). Brenda Kepler also claims that Kordel violated the MHRA by refusing to continue her "seasonal" employment because of her marital status.

At trial, the district court found that Kordel waived the defense of bona fide occupational qualification (BFOQ) because Kordel did not plead the issue. Therefore, BFOQ is not an issue in this appeal.

### ISSUE

**Did the trial court err in finding that Kordel's decision to discharge the Keplers did not violate the Minnesota Human Rights Act.**

### ANALYSIS

■ "Particularly in cases of this kind, where the trial court is weighing statutory criteria in light of the found basic facts, the trial court's conclusions of law will include determination of mixed questions of law and fact, determination of 'ultimate' facts, and legal conclusions. In such a blend, the appellate court may correct erroneous applications of the law. As to the trial court's conclusions on the ultimate issues, mindful of the discretion accorded the trial court in the exercise of its equitable jurisdiction, the reviewing court reviews under an abuse of discretion standard."

*Maxfield v. Maxfield,* 452 N.W.2d 219, 221 (Minn.1990). Section 363.03, subd. 1, of the MHRA, in relevant part, provides:

Except when based on a bona fide occupational qualification, it is an unfair employment practice: * * *

For an employer, because of race, color creed, religion, national origin, sex, marital status, status with regard to public assistance, disability, or age,* * *

(a) to refuse to hire or to maintain a system of employment which unreasonably excludes a person seeking employment; or * * *

(c) to discriminate against a person with respect to his hire, tenure, compensation, terms, upgrading, conditions, facilities, or privileges of employment.

Minn.Stat. § 363.03 (1988). Minn.Stat. § 363.01 defines "employee" as:

an individual who is employed by an employer who resides or works in this state. Employee includes a commission sales person, as defined in section 181.145, who resides or works in this state.

■ We do not "condone discrimination against a portion of a protected class, i.e. [part-time employees] already married to full-time employees" because "[t]o do so would ignore the broad prohibition against arbitrary classifications embodied in the Human Rights Act." *Kraft, Inc. v. State,* 284 N.W.2d 386, 388 (Minn.1979). The alleged discrimination, however, must be directed at the marital status itself to violate the MHRA. *Cybyske v. Independent School Dist. No. 196,* 347 N.W.2d 256, 261 (Minn.1984). Employment discrimination cases must follow the *McDonnell Douglas* three-part test. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) which provides that: (1) the plaintiff must establish a prima facie case of discrimination;

(2) after which the burden shifts to the employer to show a legitimate nondiscriminatory reason for the termination; and (3) if this burden is met by the employer the burden shifts back to the plaintiff to prove that the employer's reason for termination was pretextual. *Danz v. Jones,* 263 N.W.2d 395, 399 (Minn.1978).

▐ Under *McDonnell Douglas,* the plaintiff must first establish a prima facie case of discrimination by a preponderance of the evidence. *Sigurdson v. Isanti County,* 386 N.W.2d 715, 719–20 (Minn.1986).

A generalized formulation of the *McDonnell Douglas* prima facie case [ * * * ] would be that: (1) plaintiff is a member of a protected class; (2) plaintiff is qualified for the position from which plaintiff was discharged; (3) plaintiff was discharged, and (4) after plaintiff was discharged the employer sought people with plaintiff's qualifications.

*McDonnell Douglas,* 411 U.S. at 802–03, 93 S.Ct. at 1824–25.

▐ In its memorandum, the district court found that Kepler was not a member of a protected class. As a result, he was unable to claim marital status discrimination under the MHRA. The district court did not abuse its discretion in finding that Kepler's claim fails to implicate the MHRA.

Kepler's claim is based on the presumption that he was fired because he hired his wife as a store employee. This claim fails, because Brenda Kepler was not an employee of the store. Consequently, Kepler could not have been fired for hiring her. In addition, the record shows Kepler was fired due to poor job performance. Nothing in the record implicates Kepler's marital status as a factor in his discharge. Therefore, Kordel's act of discharging Kepler does not constitute a direct attack on the institution of marriage. *See Cybyske v. Independent School Dist. No. 196,* 347 N.W.2d 256, 261 (1984) (holding that a claim under the MHRA for marital status discrimination will not be given effect unless the alleged discrimination is directed at the institution of marriage).

▐ Brenda Kepler's claim that Kordel's refusal to rehire her constituted marital sta-

tus discrimination is a closer question. However, before her claim can succeed, she must be an employee pursuant to the MHRA. For this reason we begin our analysis with *Kraft, Inc. v. State,* 284 N.W.2d 386 (Minn.1979).

In *Kraft,* part-time employees were denied full-time positions with the company due to a policy that prohibited full-time employment to more than one member of an immediate family. The part-time employees brought claims against the company under the MHRA for marital status discrimination. The supreme court held that, absent a bona fide occupational qualification, the company's policy prohibiting full-time employment of family members was unlawful marital status discrimination under the MHRA.

Brenda Kepler claims that she is an employee of Ace Hardware and is being denied further employment because of her marital status. The record does not support Brenda Kepler's claim that she was an employee. This distinguishes her claim from the precedent set in *Kraft.* Brenda Kepler argues that she was hired by Ace Hardware to be a buyer at conventions. However, the record shows that the purpose of these conventions was not business-related, but rather to allow Ace Hardware employees an opportunity to attend seminars and to become better acquainted with the company. In short, the purpose of the conventions was to educate those who attended. We hold that such a relationship without more falls short of creating a employer-employee relationship. Her status is therefore different from the plaintiff's status in *Kraft.* Because she is not an employee, Kordel's act of barring her from conventions did not affect her employment status. We therefore hold that the MHRA is not implicated.

## DECISION

Because Delano Kepler's discharge was not based upon his marital status the MHRA is not implicated. Further, because Brenda Kepler is not an employee, as recognized by the MHRA, her claim also fails to implicate the MHRA. Therefore, the decision of the

district court finding in favor of Kordel must be affirmed.

**Affirmed.**