**LeAnn TAYLOR, Appellant,**

v.

**LSI CORPORATION OF AMERICA, Respondent.**

**No. A09–1410.**

Court of Appeals of Minnesota.

April 27, 2010.

Michael L. Puklich, Neaton & Puklich, PLLP, Chanhassen, MN, for appellant.

Thomas E. Marshall, V. John Ella, Jackson Lewis LLP, Minneapolis, MN, for respondent.

Considered and decided by MINGE, Presiding Judge; SCHELLHAS, Judge; and BJORKMAN, Judge.

## OPINION

BJORKMAN, Judge.

Appellant challenges the district court's grant of summary judgment based on her failure to present material facts demonstrating that her termination from LSI constituted a direct attack on the institution of marriage. Because the Minnesota Human Rights Act more broadly prohibits discrimination based on the identity and situation of an employee's spouse, we reverse and remand.

## FACTS

Respondent LSI Corporation of America (LSI) hired appellant LeAnn Taylor in 1988 as a receptionist/secretary. LSI is a Minnesota corporation that manufactures cabinetry and casework primarily for schools and health-care facilities. In 1999, when LSI's founder sold the company to Sagus International (Sagus), LSI became a wholly owned subsidiary of Sagus.

In September 1999, Gary Taylor joined LSI as its president. In January 2000, he began dating appellant. One year later, appellant was promoted to sales and marketing coordinator. At the time of her promotion, she was engaged to marry Taylor. In her new position, appellant was to report to LSI's head of marketing. But it does not appear that LSI's head of marketing and appellant even discussed her job functions. Appellant and Taylor married in 2001.

In 2006, Daryl Rosser, the CEO of Sagus, became concerned about LSI's performance. Rosser had fielded numerous complaints from LSI's customers and suppliers. He determined that LSI was missing customer delivery dates, its margin performance did not meet expectations, and employee morale was poor. Sagus conducted a formal review of LSI's management structure, and ultimately terminated or accepted resignations from 6 of the 25 management employees. Appellant and Taylor are two of the employees who either resigned or were terminated.

Appellant alleges that prior to her termination, Rosser and Taylor had a conversation in which they discussed appellant's continued employment with LSI. Appellant asserts that Rosser asked Taylor if he wanted to announce appellant's departure at the same time he announced his own. When Taylor responded that appellant had her own rights, and he would not get involved, Rosser told him that since Taylor was leaving LSI, "it would probably be uncomfortable or awkward for [appellant] to stay."

Appellant also alleges that, at a separate meeting, Rosser told her directly that because Taylor was leaving LSI, "he probably will be [relocating], which means you'll be relocating as well. So we just decided to eliminate your position."

Rosser disputes appellant's version of these events, asserting that her termination was based solely on considerations of the available workload and LSI's financial situation. Rosser denies telling anyone that appellant was fired because of her husband. Rosser acknowledged that he did discuss appellant's employment status with Taylor, but only asked Taylor whether appellant, like Taylor, would welcome the opportunity to resign rather than be terminated in order to "save face."

Appellant's employment ended on August 18, 2006, and her position has not been filled. Her job functions were transferred to another employee, who is also married. Taylor's resignation was effective a few weeks later.

Appellant commenced this action alleging marital-status discrimination in viola-

tion of the Minnesota Human Rights Act (MHRA), Minn.Stat. § 363A.08, subd. 2 (2006). Appellant claims that she was terminated solely because her husband's employment at LSI was ending. LSI moved for summary judgment on the basis that appellant did not come forward with evidence showing that her termination was "directed at her marital status itself." The district court granted LSI's motion. This appeal follows.

## ISSUES

I. Did the district court err in determining that marital-status discrimination under the MHRA requires a direct attack on the institution of marriage?

II. Did appellant present sufficient evidence to prove a prima facie case of marital-status discrimination?

## ANALYSIS

"On an appeal from summary judgment, we ask two questions: (1) whether there are any genuine issues of material fact and (2) whether the [district] court[ ] erred in [its] application of the law." *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn. 1990). "We review de novo whether a genuine issue of material fact exists" and "whether the district court erred in its application of the law." *STAR Ctrs., Inc. v. Faegre & Benson, L.L.P.*, 644 N.W.2d 72, 77 (Minn.2002). This court "must view the evidence in the light most favorable to the party against whom judgment was granted." *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn.1993).

Summary judgment is appropriate when the "record reflects a complete lack of proof on an essential element of the plaintiff's claim." *Lubbers v. Anderson*, 539 N.W.2d 398, 401 (Minn.1995). As to a claim of unlawful employment discrimination, summary judgment is appropriate if the employee (1) fails to present a prima facie case of discrimination, or (2) having

established a prima facie case, fails to show a genuine fact issue as to whether the "employer's proffered nondiscriminatory reasons for its employment decision were pretextual." *Albertson v. FMC Corp.*, 437 N.W.2d 113, 116 (Minn.App. 1989).

### I.

The MHRA provides that it is an unfair employment practice to terminate an employee based on marital status. Minn. Stat. § 363A.08, subd. 2. The legislature did not initially define marital status under the MHRA. In *Kraft, Inc. v. State by Wilson*, 284 N.W.2d 386, 388 (Minn.1979), the supreme court broadly defined marital status, concluding that an employer violated the MHRA by preventing a part-time employee from applying for a full-time position solely because the applicant was married to another full-time Kraft employee. The *Kraft* court expressly rejected the argument that the identity or situation of an employee's spouse falls outside of the definition of marital status. 284 N.W.2d at 388.

The supreme court declined to further extend the definition of marital status to protect a potential employee from discrimination based on her spouse's political views or associations. *Cybyske v. Indep. Sch. Dist. No. 196*, 347 N.W.2d 256, 261 (Minn. 1984), *cert. denied*, 469 U.S. 933, 105 S.Ct. 330, 83 L.Ed.2d 266 (1984). The *Cybyske* court distinguished *Kraft*, observing that the anti-nepotism policy in that case amounted to a refusal to hire a married couple, which was "a direct attack on the husband and wife as an entity and is contrary to the 'legislative judgment [that] reflects the protected status the institution of marriage enjoys in our society.'" *Id.* (quoting *Kraft*, 284 N.W.2d at 388). Absent legislative intent to "proscribe a particular political posture, whether of an em-

ployee or of the employee's spouse" and absent evidence that the alleged discrimination was "directed at the institution of marriage itself," the supreme court held that Cybyske did not have an actionable MHRA claim. *Id.*

In response to *Cybyske*, the legislature amended the MHRA to define marital status in employment cases to "include[ ] protection against discrimination on the basis of the identity, situation, actions, or beliefs of a spouse or former spouse." 1988 Minn. Laws ch. 660, § 1, at 917–18 (originally codified as amended at Minn.Stat. § 363.01, subd. 40 (1988)). Our supreme court has not yet interpreted or applied this new definition in an employment-discrimination case. *See State by Cooper*, 460 N.W.2d at 6 (noting, in a housing discrimination case, that the legislature intended to broaden the reach of the MHRA in employment cases only).

■ Our primary objective in interpreting statutes is "to ascertain and effectuate the intention of the legislature." Minn. Stat. § 645.16 (2008). To do so, we first determine whether the statutory language is clear. If a statute, construed according to the ordinary rules of grammar, is unambiguous, we may not engage in further statutory construction and must apply its plain meaning. *State by Beaulieu v. RSJ, Inc.*, 552 N.W.2d 695, 701 (Minn.1996). The parties do not argue, and we do not conclude, that the MHRA's definition of marital status is ambiguous. Accordingly, we discern whether appellant's claim falls within the plain language of the statute.

■ Appellant argues that her claim— that LSI terminated her employment because of Taylor's forced resignation—falls within the express terms of the MHRA. LSI asserts that a contrary conclusion is compelled based on this court's decisions in *Gunnufson v. Onan Corp.*, 450 N.W.2d 179, 182 (Minn.App.1990), and *Kepler v. Kordel, Inc.*, 542 N.W.2d 645, 648 (Minn.

App.1996), *review denied* (Minn. Mar. 19, 1996). We disagree. Although this court quoted *Cybyske's* "directed at the institute of marriage itself" language in both cases, the decisions did not turn on this language.

In *Gunnufson*, this court reviewed summary judgment entered against an employee who was terminated for taking leave to attend the funeral of his ex-wife's father, whom he referred to as his father-in-law. *Gunnufson*, 450 N.W.2d at 180. Gunnufson claimed that he was discriminated against based on his marital status. *Id.* We determined that he established a prima facie case and that the district court's denial of his discovery motion deprived him of the opportunity to demonstrate that the proffered reason for his dismissal was pretextual. *Id.* at 182–83. We did not reach the issue of what constitutes marital-status discrimination under the MHRA, but remanded the case for further discovery. *Id.*

Similarly, *Kepler* was not decided based on an interpretation of the statutory definition of marital status. Kepler's employer had a policy prohibiting relatives from working in the same store. *Kepler*, 542 N.W.2d at 646. Kepler recruited his wife, a former employee, to attend buying shows and conventions on behalf of the store. *Id.* Kepler ultimately was fired for performance reasons and alleged that his firing was based on marital-status discrimination. *Id.* at 647. We concluded that his claims did not implicate the MHRA because his wife was not a store employee, thus Kepler could not have been fired for hiring her. *Id.* at 648. We noted that the record did not suggest that Kepler's marital status was a factor in his discharge. *Id.* Thus, the question of what constitutes discrimination based on "marital status" has not been squarely addressed since the MHRA was amended.

LSI argues that courts in other jurisdictions that have considered "conduit" cases—where the plaintiff is the object of adverse action because of something about their spouse independent of whether their spouse works for the same employer—have determined they do not state valid marital-discrimination claims. *See, e.g., Muller v. BP Exploration (Alaska), Inc.,* 923 P.2d 783, 791 (Alaska 1996) (holding that "[e]xtending the reach of the anti-discrimination law to employment decisions based on to whom a person is married would change the focus of the law from discrimination based on broad categories ... to a highly individual factor"); *see also Miller v. C.A. Muer Corp.,* 420 Mich. 355, 362 N.W.2d 650, 653 (1984) (holding that, in the absence of a legislative definition of "marital status," "the relevant inquiry is *if* one is married rather than *to whom* one is married."). This reliance is misplaced. Neither the *Muller* nor the *Miller* courts applied a statutory definition of "marital status" similar to the one contained in the MHRA. Our legislature defined "marital status" to expressly include the "identity, situation, [and] actions" of an employee's spouse. We are bound to apply this clear expression of legislative intent.

We conclude that the district court erred in dismissing appellant's claim on the ground that it did not represent a direct attack on the institution of marriage. By its clear terms, Minn.Stat. § 363A.03, subd. 24, prohibits an employer from discriminating against an employee based on the identity or situation of the employee's spouse. The crux of appellant's claim is that LSI terminated her based on the identity and situation of her spouse, a co-employee whose forced resignation was occurring at the same time. This claim falls squarely within the statutory definition of "marital status."

## II.

■ Having determined that the conduct alleged constitutes marital-status discrimination, we turn to the question of whether appellant made a prima facie showing under the MHRA. A plaintiff may make this showing through either direct evidence of discriminatory intent or circumstantial evidence in accordance with the three-part *McDonnell Douglas* burden-shifting test. *Hoover v. Norwest Private Mortg. Banking,* 632 N.W.2d 534, 542 (Minn.2001) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973)). Direct evidence is evidence of conduct or statements by the employer's decisionmakers sufficient to permit a fact-finder to infer that the discriminatory attitude was more likely than not a motivating factor in the employer's adverse employment decision. *Walton v. McDonnell Douglas Corp.,* 167 F.3d 423, 426 (8th Cir.1999). The *McDonnell Douglas* analysis of circumstantial evidence has three prongs: (1) the plaintiff must first establish a prima facie case of discrimination; (2) the burden shifts to the employer to prove that a non-discriminatory rationale for the adverse employment decision exists; (3) the burden shifts back to the plaintiff to demonstrate that the non-discriminatory rationale was merely a pretext for discrimination. *Danz v. Jones,* 263 N.W.2d 395, 399 (Minn.1978).

The district court did not determine whether appellant had met her initial burden of establishing a prima facie case through direct evidence or circumstantial evidence. Because we generally do not decide matters not argued to and considered by the district court, *Thiele v. Stich,* 425 N.W.2d 580, 582 (Minn.1988), and because this determination is fact-intensive, we do not decide it and remand this issue to the district court. On remand, the district court, in its discretion, may reopen the record.

## DECISION

Because Minn.Stat. § 363A.03, subd. 24, defines marital status to include discrimination based on the identity and situation of a spouse, and appellant alleged conduct that constitutes such discrimination, the district court erred in dismissing appellant's claims on summary judgment.

**Reversed and remanded.**