LeAnn TAYLOR, Respondent,

v.

LSI CORPORATION OF AMERICA, Appellant.

No. A09–1410.

Supreme Court of Minnesota.

April 13, 2011.

Michael L. Puklich, Neaton & Puklich, PLLP, Chanhassen, MN, for respondent.

Thomas E. Marshall, V. John Ella, Jackson Lewis LLP, Minneapolis, MN, for appellant.

## OPINION

PAGE, Justice.

Respondent LeAnn Taylor's employment with appellant LSI Corporation of America (LSI) was terminated after her husband was forced to resign his employment as president of LSI. Taylor filed a lawsuit against LSI claiming marital status discrimination in violation of the Minnesota Human Rights Act, Minn.Stat. ch. 363A (2010) (MHRA). The district court granted summary judgment to LSI, dismissing Taylor's claims on the grounds that existing case law requires a plaintiff claiming "marital status" discrimination to allege that the termination was a "direct attack on the institution of marriage," which Taylor admits she did not assert. The court of appeals reversed, concluding that the plain language of the MHRA does not require a "direct attack on the institution of marriage" and that remand was necessary because a genuine issue of material fact existed as to whether Taylor had made a prima facie showing of "marital status" discrimination. *Taylor v. LSI Corp. of Am.*, 781 N.W.2d 912, 917 (Minn.App. 2010). We granted review and now, for the reasons discussed below, we affirm.

Taylor began her employment with LSI in 1988 as a receptionist/secretary.[1] In February 2001, Taylor was promoted to Sales and Marketing Coordinator; in June 2001, she married Gary Taylor, the president of LSI.[2] In August 2006, Gary Taylor resigned from LSI, effective August 31.

---

1. Because this case was dismissed prior to the district court making factual determinations, these facts are drawn from the limited record before us. They are only to provide context for the claim and to frame the legal issue, but are not factual findings by this court.

2. For purposes of clarity, "Taylor" refers to LeAnn Taylor and "Gary Taylor" refers to her husband.

Between Gary Taylor's offer to resign and its effective date, Taylor's employment was terminated. LSI did not hire anyone to replace Taylor and her duties were reassigned to other employees.

In her complaint, Taylor alleged that she was terminated due to her "marital status," in violation of Minn.Stat. § 363A.08, subd. 2 (2010). Section 363A.08, subdivision 2, provides that "it is an unfair employment practice for an employer, because of ... sex [or] marital status ... [to] discharge an employee." According to Taylor, the chief executive officer of LSI's parent company told Gary Taylor that he would like to terminate Taylor because "she would be uncomfortable or awkward remaining employed with [LSI] after Mr. Taylor left Defendant's employ." She also claims that the CEO told her directly that "due to her husband's situation ... and the fact that it was likely [the Taylors] were going to have to relocate, [LSI] was eliminating [her] position." LSI denies that such statements were made regarding Taylor's termination, and instead claims that Taylor was fired for legitimate business-related reasons.

In January 2009, LSI moved for summary judgment seeking dismissal of Taylor's lawsuit, arguing that the complaint failed to establish a prima facie case of marital status discrimination because it did not allege that Taylor's termination was an act "directed at the institution of marriage," as required by our decision in *Cybyske v. Independent School District No. 196*, 347 N.W.2d 256, 261 (Minn.1984). Taylor conceded that her termination did not involve a direct attack on the institution of marriage; however, Taylor argued that our decision in *Cybyske* was overruled by the Legislature's subsequent amendment of the MHRA to define "marital status" as "protection against discrimination on the basis of the identity, situation, actions, or beliefs of a spouse or former spouse." Minn.Stat. § 363A.03, subd. 24 (Minn.2010). The district court granted LSI summary judgment after concluding that it was bound by the court of appeals' decision in *Kepler v. Kordel, Inc.*, 542 N.W.2d 645 (Minn.App.1996), *rev. denied* (Minn. Mar. 19, 1996). The district court read this case to require a plaintiff to allege a direct attack on the institution of marriage in order to make out a prima facie case of marital status discrimination. *Id.*

The court of appeals found the language of the statute to be unambiguous and concluded that the "legislature defined 'marital status' to expressly include the 'identity, situation, [and] actions' of an employee's spouse." *Taylor*, 781 N.W.2d at 916 (alteration in original). Consequently, the court of appeals concluded that the district court erred by requiring "a direct attack on the institution of marriage" and reversed the grant of summary judgment and remanded to the district court for further proceedings. *Id.*

The issue presented by the parties in this case is whether "marital status" discrimination as defined in Minn.Stat. § 363A.03, subd. 24, requires a plaintiff to prove that the employer's action constitutes a direct attack on the institution of marriage. When reviewing a grant of summary judgment, we consider two questions, "whether there are any genuine issues of material fact and whether the lower courts erred in their application of the law." *Cummings v. Koehnen*, 568 N.W.2d 418, 420 (Minn.1997). We review questions of statutory interpretation de novo. *Eagan Econ. Dev. Auth. v. U–Haul Co. of Minn.*, 787 N.W.2d 523, 529 (Minn.2010). To interpret a statute, we first assess "whether the statute's language, on its face, is clear or ambiguous." *Am. Family*

*Ins. Grp. v. Schroedl,* 616 N.W.2d 273, 277 (Minn.2000). If the law is clear and free from ambiguity, then the plain meaning of the statute's words controls our interpretation of the statute. *Krummenacher v. City of Minnetonka,* 783 N.W.2d 721, 726 (Minn.2010) (citing Minn.Stat. § 645.16 (2010)); *see also Schroedl,* 616 N.W.2d at 277 (stating that we construe "words and phrases according to their plain and ordinary meaning"). We "only look outside the statutory text to ascertain legislative intent if the statute's language is ambiguous." *Erdman v. Life Time Fitness, Inc.,* 788 N.W.2d 50, 56 (Minn.2010); *see also* Minn.Stat. § 645.16.

■ We conclude that the language of the MHRA, on its face, is unambiguous because it does not lend itself to multiple interpretations or logical inconsistencies in its application. The language of the statute is clear: under Minn.Stat. § 363A.08, subd. 2, an employer cannot discharge an employee "because of ... marital status." Under Minn.Stat. § 363A.03, subd. 24, "marital status" includes "protection against discrimination on the basis of the identity, situation, actions, or beliefs of a spouse or former spouse." Reading each term with its "plain and ordinary meaning," this statute's language extends protection against marital status discrimination to include the identity of the employee's spouse and the spouse's situation, as well as the spouse's actions and beliefs. Therefore, we conclude, as did the court of appeals, that Minn.Stat. § 363A.08, subd. 2, in conjunction with Minn.Stat. § 363A.03, subd. 24, does not require a plaintiff to show that termination was "directed at the institution of marriage" in order to establish a "marital status" discrimination claim.

While we do not rely on it for our conclusion that section 363A.03, subdivision 24, does not require a plaintiff to show that the employer's actions were "directed at the institution of marriage" to establish a marital status discrimination claim, we note that the statute's history supports that conclusion. The MHRA was originally enacted as the Minnesota State Act for Fair Employment Practices to "foster the employment of all individuals ... regardless of their race, color, creed, religion, or national origin." Act of April 19, 1955, ch. 516, §§ 1–2, 1955 Minn. Laws 802, 802–03. The Legislature subsequently amended the act to make it an "unfair employment practice" for an employer to refuse to hire, discharge, or discriminate against a person with respect to employment because of a person's "marital status." Act of May 24, 1973, ch. 729, § 3, 1973 Minn. Laws 2158, 2161 (codified as amended at Minn.Stat. § 363A.08, subd. 2 (2010)); *see also State by Cooper v. French,* 460 N.W.2d 2, 5 (Minn.1990). The amendment did not, however, define what constituted "marital status." That task was left to the courts.

We addressed the meaning of the term "marital status discrimination" under the statute in *Kraft, Inc. v. State,* 284 N.W.2d 386 (Minn.1979), and *Cybyske v. Independent School District No. 196,* 347 N.W.2d 256 (Minn.1984). In *Kraft,* we held that an anti-nepotism policy that prohibited "full-time employment to individuals married to persons already employed full-time by [Kraft]" violated the MHRA. 284 N.W.2d at 387–88. In doing so, we rejected "the view that 'marital status' ... does not embrace the identity or situation of one's spouse" and that "[t]o do so would ignore the broad prohibition against arbitrary classifications embodied in the Human Rights Act." *Id.* at 388.

Notwithstanding what we said in *Kraft,* we held in *Cybyske* that the plaintiff did not have a cause of action for marital status discrimination under the MHRA

based on her claim that the school district refused to hire her because of the political beliefs and views of her husband. 347 N.W.2d at 261. In doing so, we noted that the policy we struck down in *Kraft* involved "a direct attack on the husband and wife as an entity and [was] contrary to the 'legislative judgment [that] reflects the protected status the institution of marriage enjoys in our society.'" *Id.* (quoting *Kraft*, 284 N.W.2d at 388) (alteration in original). Ultimately, we held that because "the discrimination [was] not directed at the institution of marriage itself, at least not with the same directness and closeness as in *Kraft*," the plaintiff did not have a cause of action for marital discrimination under the MHRA. *Cybyske*, 347 N.W.2d at 261.

Four years after our decision in *Cybyske*, the Legislature amended the MHRA to define the term "marital status." That definition is as follows:

> "Marital status" means whether a person is single, married, remarried, divorced, separated, or a surviving spouse and, in employment cases, includes protection against discrimination on the basis of the identity, situation, actions, or beliefs of a spouse or former spouse.

Act of April 26, 1988, ch. 660, § 1, 1988 Minn. Laws 917, 918 (originally codified at Minn.Stat. § 363.01, subd. 40 (1988); presently codified at Minn.Stat. § 363A.03, subd. 24 (2010)). Since the 1988 amendment, we have not had occasion to interpret the statute in the employment context.[3] However, we did examine the history of the amended statute in a landlord/tenant case, *State by Cooper v. French*, 460 N.W.2d 2 (Minn.1990). In doing so, we acknowledged the "extremely

broad language" in the new definition, *id.* at 6, but pointed out that language "limiting the broad definition of 'marital status' to employment cases was ultimately enacted into law," *id.* at 7.

LSI argues that even if we conclude that a direct attack on the institution of marriage is no longer required to establish a claim of marital status discrimination, we should nonetheless reverse the court of appeals because Taylor has not otherwise made out a prima facie case of marital status discrimination. We decline to address this argument. The district court dismissed Taylor's lawsuit based on an erroneous reading of the statutory requirement for a prima facie marital status discrimination claim. As a result, the district court did not consider Taylor's claims or LSI's argument that Taylor has failed to make out a prima facie case using the correct statutory standard. In our view, the issues raised by LSI's argument are best addressed by the district court in the first instance. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn.1988). Therefore, we remand this case to the district court for further proceedings.

Affirmed.

**3.** The court of appeals has applied the amended language of section 363A.03, subdivision 24, in two published opinions: *Kepler*, 542 N.W.2d at 645, and *Gunnufson v. Onan Corp.*, 450 N.W.2d 179 (Minn.App.1990). Both cases cited to *Cybyske* for the proposition that a "marital status" claim under the MHRA requires a direct attack on the institution of marriage. *Gunnufson*, 450 N.W.2d at 182; *Kepler*, 542 N.W.2d at 648. However, neither case directly addressed the new definition of "marital status."