**April AASE, Appellant,**

**v.**

**WAPITI MEADOWS COMMUNITY TECHNOLOGIES & SERVICES, INC. individually and d/b/a Community Technologies and Services, et al., Respondents.**

No. A12–1671.

Court of Appeals of Minnesota.

May 20, 2013.

Steven J. Hovey, Hoversten, Johnson, Beckmann & Hovey, LLP, Austin, MN, for appellant.

Thomas A. Harder, Foley & Mansfield, PLLP, Minneapolis, MN, for respondents.

Considered and decided by HALBROOKS, Presiding Judge; KIRK, Judge; and KLAPHAKE, Judge.*

## OPINION

HALBROOKS, Judge.

Appellant challenges the summary-judgment dismissal of her claim of unlawful termination based on marital status, arguing that the district court erred because (1) respondent failed to articulate a legitimate, non-discriminatory reason for her termination and (2) there is a genuine issue of material fact as to whether respondent's articulated reason was pretext for discrimination. We reverse and remand.

## FACTS

Respondent Wapiti Meadows Community Technologies & Services, Inc. (CTS) is an Austin-based nonprofit corporation that provides mental-health and employment counseling for low-income clients. Appellant April Aase worked for CTS as a mental-health practitioner from early 2009 until the termination of her employment on May 4, 2011. She had previously worked for CTS as an office-support employee, mental-health practitioner, and employment counselor.

CTS is one of two providers of employment-counseling services in Mower County. The other provider, Workforce Development, Inc. (WDI), is a nonprofit corporation, governed by a board of directors consisting entirely of county commissioners. Both CTS and WDI are eligible to receive federal funding under the federal Workforce Investment Act, which provides for allocation of funds to states that provide services to disadvantaged and displaced workers. *See* 29 U.S.C. § 2811 (2006). In order to receive these funds, a state must establish statewide and local workforce-investment boards to oversee the distribution of the funds. The local workforce-investment board covering Mower County (the workforce board) consists of the members of WDI's board of directors as well as members of the local community and representatives of local employers. CTS has never received funds from the workforce board, which contracts exclusively with WDI.

Aase's husband, Mark Aase, is a human-resources coordinator at Hormel Foods Corp. In April 2011, Hormel management asked Mark to represent Hormel on the workforce board. Aase understood that

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

this could cause a problem with her employer because CTS's executive director, Carlton Frank, is a former WDI employee and the two corporations are competitors in the area of employment-counseling services and have a "strained relationship."

When CTS's administrative team learned about this offer, they concluded that Aase's husband's position on one of the boards would probably violate CTS's conflict-of-interest policy, which reads:

> Employees have an obligation to conduct business within guidelines that prohibit abuse of actual or potential conflicts of interest. This policy establishes only the framework within which CTS, Inc. wishes to operate. The purpose of these guidelines is to provide general direction so employees can seek further clarification on issues related to the subject of acceptable standards of operation.

At the time, neither Aase nor CTS's administrative team were certain whether Aase's husband was considering joining WDI's board of directors or the workforce board. Over the course of two to three weeks, Frank and other members of CTS's administrative team attempted to clarify this issue in e-mailed exchanges with both Aase and her husband. Aase told Frank that it was an "advisory" board and therefore would not create a conflict. Aase gave Frank a copy of the WDI mission statement, but Frank did not consider this information sufficient to address his concerns. Attempts by CTS management to obtain more information from Aase about her husband's potential role with WDI failed. On May 3, Frank met with Aase for approximately 20 minutes. Frank stated: "Mark resigns from the position, or you're fired tomorrow morning."

CTS terminated Aase's employment on May 4, stating in a letter that the termination was "due to a conflict of interest or potential conflict of interest because of [her] husband serving on the board of [CTS's] primary competitor." Aase filed a civil suit against CTS, alleging that CTS had terminated her employment based on marital status in violation of the MHRA. CTS moved for summary judgment, arguing that Aase's failure to comply with the conflict-of-interest policy rendered her unqualified for her job, that the conflict of interest was the legitimate, nondiscriminatory reason for her discharge, and that Aase could not show that this reason was a pretext for discrimination. In the alternative, CTS argued that, even if Aase's employment termination arose out of her marital status, it was not discriminatory because compliance with the conflict-of-interest policy was a bona fide occupational qualification.

The district court granted summary judgment and dismissed the case. The district court analyzed Aase's claims under the *McDonnell Douglas* framework and concluded that, although Aase had established a prima facie case of discrimination, CTS had articulated a legitimate, nondiscriminatory reason for the termination of her employment by "consistently tak[ing] the position when communicating with Ms. Aase that she would be violating the company's conflict of interest policy if her husband became a board member with CTS's competitor." The district court concluded that Aase failed to demonstrate that the articulated reason was a pretext for discrimination because she did not "establish that a genuine dispute of fact exists on whether CTS management *honestly believed* that she had violated the policy." The district court did not address the bona fide occupational-qualification argument. This appeal follows.

## ISSUES

I.  Did the district court err by concluding that CTS met its burden of articulating

a legitimate, nondiscriminatory reason for Aase's termination?

II. Did the district court err by concluding that Aase failed to meet her burden of demonstrating that CTS's articulated reason was a pretext for discrimination?

## ANALYSIS

We review a district court's grant of summary judgment de novo. *Riverview Muir Doran, LLC v. JADT Dev. Grp., LLC,* 790 N.W.2d 167, 170 (Minn.2010). The key questions are "whether there are any genuine issues of material fact and whether the [district court] erred in [its] application of the law." *Cummings v. Koehnen,* 568 N.W.2d 418, 420 (Minn. 1997). We view the evidence "in the light most favorable to the party against whom judgment was granted." *Id.*

Employment-discrimination cases under the MHRA proceed under one of two evidentiary frameworks. *Friend v. Gopher Co.,* 771 N.W.2d 33, 37 (Minn.App. 2009). A plaintiff may prove discriminatory intent by employing the *McDonnell Douglas* burden-shifting test or by presenting sufficient direct evidence to prove her claim. *Id.* The *McDonnell Douglas* test has three steps:

> (1) the plaintiff must first establish a prima facie case of discrimination; (2) the burden shifts to the employer to prove that a non-discriminatory rationale for the adverse employment decision exists; (3) the burden shifts back to the plaintiff to demonstrate that the non-discriminatory rationale was merely a pretext for discrimination.

*Taylor v. LSI Corp. of Am.,* 781 N.W.2d 912, 917 (Minn.App.2010). The "ultimate burden of persuasion" is on the plaintiff at all times. *Sigurdson v. Isanti Cnty.,* 386 N.W.2d 715, 720 n. 2 (Minn.1986).

The MHRA provides that it is an "unfair employment practice for an employer, because of ... marital status ... [to] discharge an employee" unless the discharge is "based on a bona fide occupational qualification." Minn.Stat. § 363A.08, subd. 2(2) (2012). The statute did not initially define "marital status." *See* 1988 Minn. Laws ch. 660, § 1, at 917–18. In *Cybyske v. Ind. Sch. Dist. No. 196,* the supreme court concluded that the MHRA did not protect a teacher from retaliation based on her husband's political activity because the legislature did not intend "that any employer bias or predilection towards a spouse which is imputed to the employee, whether of substance or not, would subject the employer to a lawsuit." 347 N.W.2d 256, 261 (Minn.1984).

In 1988, the legislature amended the MHRA to define "marital status" in employment cases to include "protection against discrimination on the basis of identity, situation, actions, or beliefs of a spouse or former spouse." Minn.Stat. § 363A.03, subd. 24; 1988 Minn. Laws ch. 660, § 1, at 917–18. But in the years following the amendment, this court continued to cite *Cybyske* for the proposition that a plaintiff must prove that the discrimination was "directed at the marital status itself." *See Gunnufson v. Onan Corp.,* 450 N.W.2d 179, 182 (Minn.App. 1990); *see also Kepler v. Kordel, Inc.,* 542 N.W.2d 645, 648 (Minn.App.1996) (citing *Cybyske* to require a plaintiff to allege discrimination "constitut[ing] a direct attack on the institution of marriage").

More than two decades after the MHRA was amended to define marital status, we decided *Taylor v. LSI Corp. of Am.,* 781 N.W.2d 912 (Minn.App.2010). The plaintiff in *Taylor* alleged that she had been discriminated against based on marital status when her employer's parent company either discharged or accepted resignations

from 6 to 25 management employees, including Taylor's husband, who was LSI's president, and Taylor, who had been promoted to sales and marketing coordinator while engaged to her future husband. 781 N.W.2d at 914. She claimed that LSI terminated her employment for the sole reason that it had terminated her husband's employment. *Id.* at 914–15. LSI moved for summary judgment on the basis that Taylor "did not come forward with evidence showing that her termination was directed at her marital status itself." *Id.* at 915. The district court granted LSI's motion and dismissed Taylor's case. *Id.*

We reversed, concluding that "[t]he crux of appellant's claim is that LSI terminated her based on the identity and situation of her spouse, a co-employee whose forced resignation was occurring at the same time. This claim falls squarely within the statutory definition of 'marital status.' " *Id.* at 917. The supreme court affirmed, stating that, under the amended MHRA, it is not necessary that the termination be "directed at the institution of marriage" because the law protects against discrimination "on the basis of the identity, situation, actions, or beliefs of a spouse or former spouse." *Taylor v. LSI Corp. of Am.*, 796 N.W.2d 153, 156 (Minn.2011).

The district court in *Taylor* had granted summary judgment and dismissed for failure to state a prima facie case without applying either the direct-evidence or *McDonnell Douglas* framework. 781 N.W.2d at 917. Therefore, we remanded for further proceedings. *Id.* The supreme court likewise declined to address the issue of whether the plaintiff's claim could survive summary judgment. 796 N.W.2d at

157. Since *Taylor* was decided, neither this court nor the supreme court has addressed a claim of marital discrimination under the MHRA.

This case requires us to again address the question of the application of the *McDonnell Douglas* test to a marital-discrimination claim under the MHRA. The parties agree that *McDonnell Douglas* provides the appropriate framework. The district court determined that Aase established a prima facie case of discrimination, and neither party properly appeals this conclusion.[1] Therefore, the issues before this court are whether the district court erred in concluding that (1) CTS met its burden of articulating a legitimate, nondiscriminatory reason for Aase's discharge and (2) Aase failed to meet her burden to demonstrate that CTS's articulated reason was a pretext for discrimination.

## I.

■ In order to meet the second prong of the *McDonnell Douglas* test, the employer's reason "must only be one that, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action." *Ward v. Employee Dev. Corp.*, 516 N.W.2d 198, 202 (Minn. App.1994) (emphasis omitted). This step does not shift the burden of persuasion, but only requires the defendant to show some evidence that "its actions were related to some legitimate business purpose." *Sigurdson*, 386 N.W.2d at 720.

■ Aase argues that the reason accepted by the district court—that CTS's management "consistently [took] the posi-

1. On appeal, CTS argues that Aase did not establish a prima facie case of discrimination because she was not qualified for her job. This argument is not properly before this court because CTS did not file a notice of related appeal. *See City of Ramsey v. Holm-*

*berg,* 548 N.W.2d 302, 305 (Minn.App.1996) ("Even if the judgment below is ultimately in its favor, a party must file a notice of review to challenge the district court's ruling on a particular issue.").

tion when communicating with Ms. Aase that she would be violating the company's conflict of interest policy if her husband became a board member with CTS's competitor"—is discriminatory.[2] Aase argues that the conflict-of-interest policy itself is discriminatory because the policy effectively bans the employment of individuals whose spouse works for a competitor, and therefore functions as an anti-nepotism policy.

■ Although we do not adopt Aase's reasoning, we agree that the articulated reason adopted by the district court cannot fulfill the defendant's burden under step two of *McDonnell Douglas*. Under the amended MHRA, as applied in *Taylor*, an employer may not terminate an employee because of the "identity, situation, *actions*, or beliefs of a spouse." Minn.Stat. § 363A.03, subd. 24 (emphasis added). It was not Aase's action but rather her husband's that allegedly violated CTS's conflict-of-interest policy. Under the amended MHRA, an employer may not impute the action of a spouse to the employee and use that action to justify her termination. If we accept the district court's articulation of CTS's reasoning for terminating Aase, CTS has failed to meet its burden of production and would be subject to liability unless it can prove that the discharge was "based on a bona fide occupational qualification." *See* Minn.Stat. § 363A.08, subd. 2.

But the wording adopted by the district court does not precisely reflect the reasoning argued by CTS both in summary judgment and before this court. CTS's articulated reason was that Aase "violat[ed] CTS's valid conflict of interest policy by *refusing to provide information* regarding her husband's position on the ... board." (Emphasis added.) We do not agree with Aase's argument that CTS's conflict-of-interest policy is itself discriminatory. The wording of the policy does not indicate that CTS has a blanket policy against employing individuals whose spouse works for a competitor. The policy requires employees to "conduct business within guidelines that prohibit abuse of actual or potential conflicts of interest" and "establishes only the framework within which CTS, Inc. wishes to operate."

■ CTS did not terminate Aase's employment immediately after learning of her husband's possible appointment to the board; it asked for more information concerning her husband's potential role, specifically that Aase clarify what board he would be appointed to. Aase was discharged approximately three weeks later, after failing to supply the information requested by CTS management and after a meeting with Frank where Aase refused to discuss the situation. The belief that the action of an employee's spouse—such as taking a position with a competitor—violates an employer's conflict-of-interest policy is not a legitimate, nondiscriminatory reason for an adverse employment action.

2. Aase also argues that terminating her employment for violating CTS's conflict-of-interest policy is not legitimate because there was "no evidence presented to the [district court] upon which the [district court] could have concluded April Aase even possibly violated the policy." This is essentially a pretext argument, not a challenge to CTS's articulated reason. Further, this argument assumes that CTS bears a burden of proof at stage two of *McDonnell Douglas*, rather than a burden of production. *See Danz v. Jones*, 263 N.W.2d 395, 399 (Minn.1978) ("Thus, upon a prima facie showing by the plaintiff, there is a shift, but not in the ultimate burden of proof. Only the burden of going forward with the evidence shifts to the defendant."). CTS is only required to articulate a legitimate, nondiscriminatory reason for its decision to terminate Aase, not prove the genuineness of that reason. *See Ward*, 516 N.W.2d at 202.

But discharging an employee for refusing to cooperate with an employer's attempt to mitigate a potential conflict of interest is based on the actions of the employee, not her spouse, and therefore is nondiscriminatory under the MHRA. Because CTS has articulated a legitimate, non-discriminatory reason for Aase's termination, our examination turns to step three of *McDonnell Douglas*.

## II.

Once an employer articulates a legitimate, nondiscriminatory reason for the adverse employment action, the burden returns to the employee to demonstrate that the articulated reason is a pretext for discrimination. *Ward*, 516 N.W.2d at 202. A plaintiff may fulfill this prong of *McDonnell Douglas* "either directly by persuading the court that a discriminatory reason likely motivated the employer or indirectly by showing that the employer's proffered reason is unworthy of credence." *Sigurdson*, 386 N.W.2d at 720 (quotation omitted).

The district court reasoned that, because Frank "determined that Ms. Aase violated the policy when her husband accepted the Board position with a CTS competitor," Aase would have to show that "a genuine dispute of fact exists on whether CTS management *honestly believed* that she had violated the policy." But the district court's discussion of whether or not the belief was genuine is misplaced. It was not a legitimate, nondiscriminatory act for CTS to discharge Aase solely based on the actions of her husband, even if CTS believed those actions violated the conflict-of-interest policy.

The proper inquiry at this stage is whether CTS's legitimate, articulated reason for termination—Aase's refusal to cooperate with CTS management's attempt to mitigate a potential conflict of interest—

was pretext for discrimination. We conclude that there are genuine fact issues related to this question. Although Aase was not immediately terminated, the record reflects that members of CTS's administrative team favored terminating her employment if her husband joined the board. Frank, himself, told Aase that her employment would be terminated if her husband did not resign from the board. And CTS's termination letter does not mention her refusal to cooperate, only that she was discharged "due to a conflict of interest or potential conflict of interest because of [her] husband serving on the board of [CTS's] primary competitor." Considered in the light most favorable to Aase, this evidence could support an inference that Aase's marital status was the true reason for her discharge. And because there is a triable issue on the pretext prong of the *McDonnell Douglas* test, summary judgment is inappropriate.

## DECISION

The district court erred in determining that CTS could discharge Aase because CTS believed that it was a violation of its conflict-of-interest policy for her husband to take a position on a competitor's board. But CTS articulated a legitimate, nondiscriminatory reason for Aase's termination: her failure to cooperate with CTS's attempt to mitigate a potential conflict of interest. Because a genuine issue of material fact exists concerning whether this reason was a pretext for discrimination, we reverse the district court's grant of summary judgment in favor of CTS and remand for further proceedings.

**Reversed and remanded.**