*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

## STATE OF MINNESOTA
## IN COURT OF APPEALS
## A15-1912

County of Isanti,
Respondent,

vs.

Keith Allen Kiefer, defendant and third party plaintiff,
Appellant,

vs.

City of Ramsey, et al.,
Third Party Defendants.

**Filed August 1, 2016**
**Affirmed in part, reversed in part, and remanded**
**Larkin, Judge**

Isanti County District Court
File No. 30-CV-11-589

Jeffrey R. Edblad, Isanti County Attorney, Timothy C. Nelson, Assistant County Attorney, Cambridge, Minnesota (for respondent)

Erick G. Kaardal, Mohrman, Kaardal & Erickson, P.A., Minneapolis, Minnesota (for appellant)

Considered and decided by Johnson, Presiding Judge; Ross, Judge; and Larkin, Judge.

**LARKIN**, Judge

Following a bench trial on respondent county's complaint alleging violations of its solid-waste and zoning ordinances, the district court ordered appellant to remove certain items that were stored outdoors on his property and rejected his constitutional takings claim. Appellant challenges the district court's order, arguing that the outdoor storage does not violate the county's solid-waste ordinance and that it constitutes a permissible preexisting nonconforming use. Appellant also argues that the county's misapplication of the solid-waste and zoning ordinances resulted in a regulatory taking. We conclude that appellant's outdoor storage does not violate the solid-waste ordinance. And although we affirm the district court's conclusion that the outdoor storage is not a use that is currently permitted under the county's zoning ordinance, because the district court's ruling on appellant's takings claim is based on its erroneous conclusion regarding application of the solid-waste ordinance and because the district court did not determine whether the storage is a permissible preexisting nonconforming use, we reverse in part and remand for further proceedings.

**FACTS**

Respondent County of Isanti sued appellant Keith Allen Kiefer, alleging that he had violated the Isanti County solid-waste and zoning ordinances by storing several items outdoors on his property, which was zoned for agricultural/residential use. The items included unlicensed vehicles, piles of scrap metal, tin, old furniture, old building material, lumber, old windows, old plumbing fixtures, old sinks, a semitrailer container, old pipes,

2

a mobile home, and other miscellaneous debris. The county requested an order authorizing it to remove the items from Kiefer's property and to assess the costs of the removal against Kiefer. Kiefer counterclaimed, asserting an unconstitutional taking by the county. The case was tried to the district court, and the court found the relevant facts to be as follows.

At the time of trial, Kiefer had occupied 52.94 acres of property in Wyanett Township, Isanti County, since 1992. He had owned the property since at least 1996. The property is currently zoned for agricultural/residential use, but it was zoned solely for agricultural use when Kiefer purchased it.

In April 2008, Holly Nelson, Isanti County's compliance and environmental technician, received a complaint from a citizen regarding vehicles on Kiefer's property. Nelson inspected the property and found vehicles, vehicle parts, scrap iron, and other miscellaneous items on the property. Between May and September, Nelson sent three letters to Kiefer informing him that the condition of his property violated Isanti County's solid-waste and zoning ordinances and directing him to bring the property into compliance with the ordinances. Between May and October, Nelson inspected the property three times and observed that Kiefer had not removed the items.

Nelson inspected the property five additional times between October 2008 and July 2014. The items remained on Kiefer's property. Nelson photographed the items on Kiefer's property, including a mobile home, licensed and unlicensed vehicles, a semitrailer, and miscellaneous personal property including a tank, wiring, plastic, an engine block, metal, an old tire rim, a rusted handsaw, two hot water heaters, a sod roller, a large metal box, a disassembled plastic storage shed, a small wooden box containing logs, a rubber

3

tarp, scrap lumber, a shovel with no handle, an old grate, a steering wheel, household coolers, an unidentified part, old machinery, shelving, a can, an old lawn mower deck, piping, steel rods, posts, old furniture, a rusted metal equipment rack, a dolly, a sink, pallets, an electric motor, tractor tires, a broken door panel, and PVC gutter materials. All of the items were in significant disrepair, and most of them were visible from the road.

The district court concluded that the presence of the items, with the exception of the licensed vehicles, wooden box, mobile home and semitrailer, violated Isanti County's solid-waste ordinance. The district court also concluded that the presence of the items, with the exceptions noted above, violated Isanti County's zoning ordinance because the outdoor storage of those items on Kiefer's property did not fall within the uses that were currently permitted under the zoning ordinance. Lastly, the district court concluded that the county's enforcement of its ordinances did not result in an unconstitutional taking.

The district court entered judgment against Kiefer and ordered him to remove the violative items within 60 days. The district court authorized the county to remove the items and to assess the removal costs against Kiefer if he did not comply with the order. Kiefer moved for amended findings and to stay enforcement of the judgment. The district court denied Kiefer's motion for amended findings, but it stayed enforcement of the judgment pending this appeal.

## DECISION

### I.

Kiefer argues that Isanti County's solid-waste ordinance does not prohibit the outdoor storage of the unlicensed vehicles and miscellaneous items on his property. "We

4

review a district court's findings of fact in a bench trial for clear error, and the district court's legal conclusions de novo." *Slattengren & Sons Props., LLC v. RTS River Bluff, LLC*, 805 N.W.2d 279, 281 (Minn. App. 2011) (citations omitted), *review granted* (Minn. Dec. 13, 2011) *and appeal dismissed* (Minn. Mar. 7, 2012). The interpretation and application of an ordinance is a question of law that we review de novo. *Cannon v. Minneapolis Police Dep't*, 783 N.W.2d 182, 192 (Minn. App. 2010).

"The rules governing statutory interpretation are applicable to the interpretation of . . . ordinances." *Id.* at 192-93. "Therefore, when construing an ordinance, we first determine whether the language is reasonably subject to more than one interpretation. If the language is unambiguous, we must give effect to the unambiguous text . . . ." *Id.* at 193 (citation omitted). A statute is ambiguous when its language is susceptible to more than one reasonable interpretation. *City of Brainerd v. Brainerd Invs. P'ship*, 827 N.W.2d 752, 757 (Minn. 2013).

The preamble to the Isanti County Solid Waste Ordinance states that it is an ordinance

> authorizing and providing for County Solid Waste Management, establishing powers and duties in connection therewith, establishing standards and requirements for solid waste management operations within the County of Isanti, [and] requiring a license for establishment and use of a solid waste management operation . . . in purpose and object to promote health, welfare and safety of the public and protect resources of water, air and land.

The ordinance provides that "[n]o person shall cause, permit, or allow land or property under his control to be used for solid waste management purposes, except at an

5

operation for which a license has been granted by the County Board, unless otherwise provided by this ordinance." Isanti County, Minn., Solid Waste Ordinance § II, subd. 1 (2005). The ordinance further provides that:

> Solid waste shall not be stored on public or private property for more than two (2) weeks without the written approval of the Solid Waste Officer. Nonputrescible wastes suitable for recycling shall not be stored on public or private property in a manner which creates a nuisance, blight, or health hazard.

*Id*. at § IV, subd. 4 (2005).

Because the district court did not find that the unlicensed vehicles and miscellaneous items are "suitable for recycling," the county did not establish that the storage of the items is prohibited under the solid-waste ordinance's nonputrescible-waste clause. The remaining relevant prohibition under the ordinance applies if the unlicensed vehicles and miscellaneous items fall within the definition of "solid waste." "Solid waste management" means "the storage, collection, or removal of solid waste from or on public or private property, its transportation to intermediate or final disposal facilities or its final disposal methods approved by the Agency." *Id*. at § I, subd. 31 (2005). And "solid waste" means "garbage, refuse, sludge from a water supply treatment plant or air contaminant treatment facility, or other discarded waste materials and sludges, in solid, semi-solid, liquid or contained gaseous form, resulting from industrial, commercial, mining, or agricultural operations, or from community activities . . . ." *Id*. at § I, subd. 29 (2005). Because the last phrase of the solid-waste definition modifies all of the preceding terms, we focus our analysis on that phrase.

6

The last phrase states that the solid waste results "from industrial, commercial, mining, or agricultural operations, or from community activities." *Id.* The district court concluded that the items on Kiefer's property satisfy this category because they "are clearly manufactured or, in the case of lumber, agricultural, items."[1] Kiefer argues that "[i]f we are to accept the logic of the district court, then a product such as a new chair, a new car, a new table, a new lamp, or a new shovel is solid waste at the moment of manufacturing." Kiefer contends that the definition of solid waste includes only the "non-usable material from the creation of the products" or "the excess not used to create the product—not the product itself as the district court suggests." The county argues that we should adopt the district court's reasoning, noting that it could not take the district court's logic to the extreme suggested by Kiefer because the solid-waste ordinance only applies to discarded items.

Kiefer's argument is the only reasonable interpretation of the solid-waste definition for three reasons. First, when we read Isanti County's solid-waste ordinance as a whole, as we must, it is obvious that the ordinance is meant to apply to conventional solid-waste-management operations, and not merely outdoor storage in general. *See Am. Family Ins. Grp. v. Schroedl*, 616 N.W.2d 273, 277 (Minn. 2000) (stating that an appellate court is to "read and construe a statute as a whole"). For example, the ordinance provides for licensing of solid-waste-management operations and grants powers to a solid-waste officer. Isanti County, Minn., Solid Waste Ordinance §§ II-III (2005). It also regulates the

---

[1] The district court did not find that any of the items on Kiefer's property resulted from "community activities."

collection and transportation of solid waste, solid-waste disposal facilities, incineration and energy recovery, intermediate solid-waste disposal facilities, recycling facilities, and the termination of solid-waste operations. *Id.* at §§ V-IX, XI (2005). None of these regulations appear to describe the outdoor storage on Kiefer's property.

Second, the ordinance does not distinguish between indoor and outdoor storage in prohibiting the storage of solid waste on public or private property for more than two weeks. *See id.* at § IV, subd. 4. As a result, defining solid waste to include every item that is "clearly manufactured" results in an unworkably broad definition and unreasonably broad regulation. Such an approach could bring common household items that are dysfunctional or no longer serve their intended purpose—such as an irreparable television or an outdated computer—within the definition of solid waste. We cannot imagine a reasonable basis to prohibit a landowner from storing such items indoors on his property for more than two weeks.

And third, restricting indoor and outdoor storage of all finished products under the solid-waste ordinance simply because the products were manufactured in an industrial or commercial operation goes much farther than necessary to advance the stated purpose of the ordinance, which is to "promote [the] health, welfare and safety of the public and protect resources of water, air and land." *See id.* at preamble (2005); *see also Frank's Nursery Sales, Inc. v. City of Roseville*, 295 N.W.2d 604, 609 (Minn. 1980) ("A zoning ordinance must always be considered in light of its underlying policy.").

We recognize that the solid-waste ordinance is not a zoning ordinance, but we are mindful that when construing ordinances that restrict land use, we "must give weight to the

8

interpretation that, while still within the confines of the term, is least restrictive upon the rights of the property owner to use his land as he wishes." *Frank's Nursery*, 295 N.W.2d at 608-09 (construing the "plain and ordinary meaning" of an ordinance and applying principle that "zoning ordinances should be construed strictly against the city and in favor of the property owner"). The county's proposed interpretation of the solid-waste definition contradicts this principle. And we take no comfort in the county's assurance that it will only apply the solid-waste ordinance reasonably, to items that the county deems discarded. Frankly, we believe the county overreaches with its solid-waste ordinance in this case to remedy its failure to enact an ordinance regulating outdoor storage in general.

In sum, the county's interpretation of the relevant statutory language is not a reasonable alternative to Kiefer's reasonable interpretation. Although some people will view the items on Kiefer's property as an eyesore, that concern does not justify applying Isanti County's solid-waste ordinance in this case. The unlicensed vehicles and other miscellaneous items on Kiefer's property are not "solid waste" under the plain language of the ordinance, and his outdoor storage of the items is not governed by the ordinance. We therefore hold that Kiefer's outdoor storage of the unlicensed vehicles and miscellaneous items on his property does not violate Isanti County's solid-waste ordinance.

## II.

As to Isanti County's zoning ordinance, the district court concluded that Kiefer's outdoor storage is not a use that is currently permitted under the county's zoning ordinance, focusing its analysis on whether the use is a permissible accessory use under the ordinance. *See* Isanti County, Minn., Zoning Ordinance § 6, subd. 5 (2014) (permitting "accessory

9

uses customarily incidental to the uses permitted in . . . this Section"). Kiefer does not challenge that conclusion on appeal. Instead, Kiefer argues that his "prior lawful use of the real property still exists and must be considered today as a permitted non-conforming use." He contends that "since his initial purchase of the 52.9 plus acres of land . . . [he has] used the property for his manufactured mobile home, storage of vehicles, semi-trailers, and the outdoor storage of personal property including material piles," and that "[t]his occurred . . . prior to the enactment of the county's zoning ordinances in March 1996."

In district court, Kiefer argued that his outdoor storage is a permissible preexisting nonconforming use under the zoning ordinance and Minnesota caselaw. The zoning ordinance states: "All legally established non-conformities as of the date of this Ordinance may continue, but they will be managed according to applicable state statutes and other regulations of this community for the subjects of alterations and additions, repair after damage, discontinuance of use, and intensification of use." *Id.* at § 22, subd. 1 (2014).

Moreover, the supreme court has stated:

> It is a fundamental principle of the law of real property that uses lawfully existing at the time of an adverse zoning change may continue to exist until they are removed or otherwise discontinued. . . . [A] residential zoning ordinance may constitutionally prohibit the creation of uses which are nonconforming, but existing nonconforming uses must either be permitted to remain or be eliminated by use of eminent domain . . . .

*Hooper v. City of St. Paul*, 353 N.W.2d 138, 140 (Minn. 1984) (citation and quotation omitted).

The district court did not determine whether Kiefer's outdoor storage of the unlicensed vehicles and miscellaneous items is a permissible preexisting nonconforming use.[2] Because that determination is fact intensive and the district court's findings regarding Kiefer's outdoor storage before the zoning change are inadequate to resolve the issue, we remand for the district court to determine whether Kiefer's outdoor storage of the unlicensed vehicles and miscellaneous items is a permissible preexisting nonconforming use. *See Taylor v. LSI Corp. of Am.*, 781 N.W.2d 912, 917 (Minn. App. 2010) (remanding a "fact-intensive" issue to the district court), *aff'd*, 796 N.W.2d 153 (Minn. 2011).

**III.**

Kiefer argues that the county's misapplication of its solid-waste and zoning ordinances results in an unconstitutional taking of his property. The United States Constitution provides that "private property [shall not] be taken for public use, without just

---

[2] The district court did determine that storage of the mobile home and semitrailer are permissible preexisting nonconforming uses.

11

compensation," U.S. Const. amend. V, and the Minnesota Constitution provides that "[p]rivate property shall not be taken, destroyed or damaged for public use without just compensation," Minn. Const. art. I, § 13.  A property owner has a cause of action for inverse condemnation when the government has taken private property without formally using its eminent-domain power.  *N. States Power Co. v. Minn. Metro. Council*, 684 N.W.2d 485, 487 n.2 (Minn. 2004).

It "is well established that the government need not directly appropriate or physically invade private property to effectuate a taking."  *Wensmann Realty, Inc. v. City of Eagan*, 734 N.W.2d 623, 632 (Minn. 2007).  "In limited circumstances, government regulation of property may result in a taking."  *Id.*  "[A] taking may result when the government goes 'too far' in its regulation, so as to unfairly diminish the value of the individual's property, thus causing the individual to bear the burden rightly borne by the public."  *Id.* (quotation omitted).  "The property owner challenging the government's action has the burden of proving an unconstitutional taking or damage to the property."  *Stenger v. State*, 449 N.W.2d 483, 485 (Minn. App. 1989), *review denied* (Minn. Feb. 28, 1990).  "Whether a governmental entity's action constitutes a taking is a question of law that [appellate courts] review de novo."  *Wensmann*, 734 N.W.2d at 631.

Kiefer contends that the county's misapplication of its solid-waste and zoning ordinances resulted in a regulatory taking.  The district court's rejection of that claim is based on the erroneous conclusion that Kiefer violated Isanti County's solid-waste ordinance.  Moreover, whether or not Kiefer's outdoor storage is a permissible preexisting

12

nonconforming use remains to be determined on remand. We therefore reverse the district court's ruling on Kiefer's takings claim and remand the claim for reconsideration.

*Conclusion*

In conclusion, we reverse the district court's ruling that Kiefer's outdoor storage violates Isanti County's solid-waste ordinance. Although we affirm the district court's ruling that Kiefer's outdoor storage is not a use that is currently permitted under Isanti County's zoning ordinance, we remand for the district court to determine whether the storage is a permissible preexisting nonconforming use. Lastly, we reverse the district court's ruling on Kiefer's takings claim and remand the claim for reconsideration in light of our decision regarding application of Isanti County's solid-waste ordinance and the district court's resolution of Kiefer's preexisting-nonconforming-use argument on remand.

**Affirmed in part, reversed in part, and remanded.**