KRAFT, INC., petitioner, Respondent,

v.

STATE of Minnesota, by William L. Wilson, Commissioner, Department of Human Rights, Appellant.

No. 48906.

Supreme Court of Minnesota.

Sept. 14, 1979.

Warren Spannaus, Atty. Gen., Richard B. Allyn, Sol. Gen., and Mark B. Levinger, Sp. Asst. Atty. Gen., St. Paul, for appellant.

Felhaber, Larson, Fenlon & Vogt and David R. Hols, St. Paul, Janet Skaare Morris, Kraft, Inc., Glenview, Ill., for respondent.

Donald E. Horton, Jr., Labor Relations Agency, Northwest Airlines, Inc., St. Paul, for amicus curiae.

SHERAN, Chief Justice.

This appeal by the Commissioner of the Department of Human Rights arises from an order of the district court of Ramsey County. The district court held that a nepotism employment policy adopted by respondent Kraft, Inc. does not violate Minn. Stat. § 363.03, subd. 1 (1978) proscribing employment discrimination based on marital status. Petitioner contests this determination. We reverse.

Gloria Scheid, Marlene Kraus, Kathy Petterson and Elaine Pregler, part-time employees of the Kraft, Inc. plant at New Ulm, Minnesota, sought more desirable full-time positions with the company. Because each was married to a full-time employee of the company, Kraft invoked its policy prohibiting full-time employment of more than one member of an immediate family. The Kraft rule defined immediate family as "father, mother, husband, wife, son, daughter, stepson or stepdaughter, brother, sister and in-laws" at a single facility.[1]

Between November 1974 and September 1975, these employees filed charges with the Minnesota Department of Human Rights claiming that Kraft's policy constituted discrimination based on marital status. The Commission issued a complaint on January 25, 1977. The Hearing Examiner of the Department of Human Rights sustained the Commission's position. The subsequent reversal of the Hearing Examiner by the district court precipitated this appeal.

In our opinion, absent a compelling and overriding bona fide occupational qualification, an antinepotism employment rule denying full-time employment to individuals married to persons already employed full time by the employer constitutes a discriminatory practice based on marital status within the meaning of the Minnesota Human Rights Act.

Section 363.03, subd. 1 of the Minnesota Human Rights Act[2] provides in relevant part:

1. In 1976, respondent amended its policy to provide that a married couple may be employed in the same facility if their marriage took place after both commenced full-time employment. The couple, however, may not work the same shift, in the same department, one under the supervision of the other or in positions where their association would risk the company's security or be contrary to its best interests.

2. In scope and intent the Minnesota Human Rights Act is similar to Title VII of the Civil Rights Act of 1964, § 703, 42 U.S.C.A. § 2000e-2 (West 1964). Title VII, however,

Except when based on a bona fide occupational qualification, it is an unfair employment practice:

\* \* \* \* \* \*

(2) For an employer, because of race, color, creed, religion, national origin, sex, marital status, status with regard to public assistance, disability, or age,

(a) to refuse to hire or to maintain a system of employment which unreasonably excludes a person seeking employment; or

\* \* \* \* \* \*

(c) to discriminate against a person with respect to his hire, tenure, compensation, terms, upgrading, conditions, facilities, or privileges of employment.

The individuals here involved, married to full-time employees of respondent, were denied full-time employment precisely because of their marital status. By including marital status within the parameters of the Human Rights Act, the legislature clearly intended to outlaw arbitrary classifications relating to marriage. This legislative judgment reflects the protected status the institution of marriage enjoys in our society. *See, e. g., Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965). Indeed, the United States Supreme Court has recognized as fundamental under the equal protection and due process clauses the right to freedom of choice in the marriage relationship. *Loving v. Virginia*, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967). Acknowledging the fundamental nature of this relationship, the legislature in drafting the Minnesota Human Rights Act intended that only where a business necessity is compelling and overriding may an employer differentiate on the basis of marital status.

To justify such an employment policy, an employer must advance a bona fide occupational qualification which will withstand the strict scrutiny of a reviewing court. Mere business convenience is insufficient.

■ We reject the view that "marital status," while it denotes the fact that one is or is not married, does not embrace the identity or situation of one's spouse. Since respondent does employ married, single and divorced individuals, to hold otherwise would condone discrimination against a portion of a protected class, i. e., job applicants already married to full-time Kraft employees. *Accord, Washington Water Power Co. v. Washington State Human Rights Commission*, 91 Wash.2d 62, 586 P.2d 1149 (1978); *contra Thomson v. Sanborn's Motor Express*, 154 N.J.Super. 555, 382 A.2d 53 (1977). To do so would ignore the broad prohibition against arbitrary classifications embodied in the Human Rights Act and would elevate form over substance.

Endorsing a narrow definition of marital status and uncritically upholding an employment policy such as respondent's could discourage similarly situated employees from marrying. In a locale where a predominant employer enforced such a policy, economic pressures might lead two similarly situated individuals to forsake the marital union and live together in violation of Minn. Stat. § 609.34.[3] Such an employment policy would thus undermine the preferred status enjoyed by the institution of marriage.

In view of these considerations, we hold the employment policy of respondent presumptively invalid under Minn.Stat. § 363.-03, subd. 1. We reverse the decision of the district court and remand to the Hearing Examiner for a factual determination of

---

proscribes sex discrimination while § 363.03, subd. 1 additionally prohibits marital status discrimination. The issue of sex discrimination was not raised in the proceedings below.

**3.** Respondent's antinepotism policy does not discourage two romantically involved employees from living together, but it does discriminate against a subclass of married couples. The United States Supreme Court has held that discrimination against a portion of a protected class through the unequal application of a

seemingly neutral employment policy is prohibited under Title VII of the Civil Rights Act of 1964, *supra. Phillips v. Martin Marietta Corp.*, 400 U.S. 542, 91 S.Ct. 496, 27 L.Ed.2d 613 (1971); *see also Sprogis v. United Airlines, Inc.*, 444 F.2d 1194 (7th Cir. 1971). In another Title VII action, the Seventh Circuit declared that a no-spouse employment rule having a substantial discriminatory impact is presumptively invalid. *Yuhas v. Libbey-Owens-Ford Co.*, 562 F.2d 496 (7th Cir. 1977).

whether respondent's employment policy is a "bona fide occupational qualification" within the meaning of § 363.03, subd. 1.

Reversed and remanded.

OTIS, J., took no part in the consideration or decision of this case.