Evelyn BELTON–KOCHER, Appellant,

v.

ST. PAUL SCHOOL DISTRICT,
Respondent.

No. C5–99–1402.

Court of Appeals of Minnesota.

May 16, 2000.

Stephen W. Cooper, Kathryn J. Cima, The Cooper Law Firm, Chartered, Minneapolis, MN (for appellant).

James R. Andreen, Erstad & Riemer, P.A., Minneapolis, MN (for respondent).

Considered and decided by
KLAPHAKE, Presiding Judge,
CRIPPEN, Judge, and SHUMAKER,
Judge.

## OPINION

CRIPPEN, Judge.

This appeal presents the conflict of two critical public interests: first, that employees be hired on the basis of their qualifications and without discrimination against protected classes; and second, that public-service, educational agencies be permitted to select the employee with the greatest job-performance potential. In this case, we affirm the trial court's judgment that respondent St. Paul school district rejected candidates who would be supervised by their spouses under a bona fide, essential-management standard.

## FACTS

Appellant applied for the position of Assistant Director of Student Placement with the St. Paul public school district. Appellant's husband was the direct supervisor of this position at the time, and the St. Paul school district has an anti-nepotism policy that prohibits any employee of the school district from being directly supervised by a spouse or a member of the prospective employee's immediate family. Appellant was invited to interview for the position, but the district then canceled the interview because it determined that the hiring of appellant would violate its anti-nepotism policy. Appellant filed suit, claiming that the district's refusal of her application for employment constituted discrimination on the basis of her marital status in violation of the Minnesota Human Rights Act. The trial court ruled in respondent's favor and denied appellant's motion for a new trial.

## ISSUE

Did respondent St. Paul school district show that it's anti-nepotism policy constitutes a bona fide occupational qualification?

## ANALYSIS

The Minnesota Human Rights Act provides in part that it is an unfair employment practice for an employer to refuse to hire a person based upon marital status, except when marital status is a bona fide occupational qualification. Minn.Stat. § 363.03, subd. 1(2)(a), (c) (1998). Respondent St. Paul school district has an anti-nepotism policy that states, in part:

> No employee of the School District shall be assigned to a position in which that employee is directly supervised by another employee who is (1) a member of his or her immediate family (parent, spouse, child, or sibling); (2) an in-law; or (3) a member of the employee's household.

The trial court made numerous findings of fact that are not questioned by appellant. On the court's ultimate conclusion as to the necessity for respondent's anti-nepotism policy, we must determine whether the trial court misapplied the law. *Maxfield v. Maxfield*, 452 N.W.2d 219, 221 (Minn.1990). Where the trial court's treatment of mixed questions of law and fact and its treatment of the ultimate issues is examined for a misapplication of the law, this court should "carefully review" the

trial court's ultimate conclusions. *See id.* at 221 (citation omitted).

◼ To resolve the conflict in this case, the parties offer various characterizations of the governing rule of law but do not suggest that the trial court erred in its observation of law that respondent's policy is acceptable if it is "reasonably necessary" for the hiring and performance of staff who conduct operations of the school district. The governing standard is deliberately narrow and is read strictly. *See Huisenga v. Opus Corp.*, 494 N.W.2d 469, 472–73 (Minn.1992) (applying U.S. Supreme Court Title VII occupational qualification analysis from *International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, UAW v. Johnson Controls, Inc.*, 499 U.S. 187, 201, 111 S.Ct. 1196, 1204, 113 L.Ed.2d 158 (1991), noting that qualification defense is written narrowly and read narrowly). As the trial court observed, the required necessity for an otherwise-unlawful job qualification has been variously characterized as compelling, overriding, or related to the essence of a job. *See Kraft, Inc. v. State*, 284 N.W.2d 386, 388 (Minn.1979); *see also Elbers v. Growe*, 502 N.W.2d 810, 815 (Minn.App.1993) (job requirement must relate to "essence" of job or "central mission of the employer's business"), *review denied* (Minn. Sept. 30, 1993). The Minnesota Supreme Court has held that a business necessity must be "compelling and overriding" in order to justify a requirement based on marital status. *Kraft*, 284 N.W.2d at 388.

◼ The dispute of the parties dwells on the sufficiency of the evidence in this case to show the business necessity of hiring persons who will be supervised by someone other than their spouses. The trial court reached its conclusion on necessity because of evidence demonstrating that the marriage relationship between a supervisor and an employee who reports to the supervisor will interfere with job performance in numerous ways, by affecting: (a) impartial job-performance appraisals; (b) the making of impartial job assignments; (c) the impartial allocation of job-training opportunities for employees; (d) the impartial administration of discipline; (e) the impartial administration of employee benefits such as leave requests; (f) the occurrence of judgment on the job that is unaffected by an intimate relationship with the supervisor; (g) the hiring of candidates without preference for relatives; and (h) the hiring and supervision of staff and the performance of work without damage done to the morale of other employees. These factors were demonstrated to the satisfaction of the trial court through the testimony of two witnesses. Finding no basis on which we might correct this trial court analysis of the business-necessity issue, we must affirm its conclusion that respondent's policy states a bona fide occupational qualification.

◼ Just as appellant refrains from an argument on the exact nature of the narrow standard of law that applies to the case, she does not question that job-performance factors considered by the trial court might show the necessity for respondent's policy. Rather, appellant asserts that the evidence presented was not sufficient to establish the legitimacy of these factors. Appellant challenges the adequacy of the testimony of the school district's witnesses, principally because it is based on their expert appraisal of the school district's employment requirements—characterized by one witness as "common sense"—and because the evidence does not include useable data, either empirical evidence or recitations of anecdotal evidence known by the witnesses.[1] To be convincing, appellant contends, the proof must be more than a witness's mere subjective belief. But as the trial court found, the evidence in this case is sufficiently convincing and is

---

1. Appellant also offers no legal authority holding that a policy like that employed by respondent is inappropriate for a school organization, and we find no such authority. Undisputed trial court testimony states that policies of this type are common in the industry.

representative of expert opinion rather than mere belief.

Appellant also contends that the witnesses inadequately addressed the issue of a need for the policy, contending they did not squarely address the ultimate question of necessity. But the trial court did not err in making no demand for testimony in the nature of an ultimate declaration of law. Testifying as to the factors that demonstrated necessity for respondent's rule, the expert witnesses provided sufficient evidence for the trial court's ultimate conclusion on business necessity.[2]

Finally, appellant suggests that the considerations identified in this case are legally inadequate because of the broad impact of the trial court's holding, which is premised on evidence that is not narrowly confined to the hiring and job performance in the operation of schools. The witnesses who established respondent's case were experts in the administration of schools, and the sufficiency of their evidence is judged only for the case in which they testified, involving job performance in an educational environment.

## DECISION

The trial court properly found respondent St. Paul school district's anti-nepotism policy constituted a bona fide occupational qualification, and respondent St. Paul school district's refusal to hire appellant on the basis of her marital status did not violate the Minnesota Human Rights Act.

**Affirmed.**

---

**2.** The evaluation of occupational qualifications for discrimination purposes commonly relates to business needs considered in terms of job performance. Thus, precedents speak, for example, of the need that qualifications relate to the "essence" of a job. *Huisenga,* 494 N.W.2d at 473 (quoting *International Union,* 499 U.S. at 203, 111 S.Ct. at 1205). Alternatively, the need for qualifications may be studied with regard for overriding needs in the employer's business (the "central mission of the employer's business"). *Id.* Appellant asserts the significance of testimony by a witness for the school that its nepotism policy might not affect the central mission of the school. This testimony does not diminish the legal importance of considerations demonstrating that impartial decision-making, on the job and in hiring for the task, is a necessary element in job performance of school personnel.