STATE OF MINNESOTA

IN SUPREME COURT

A23-0373
A23-0621

Court of Appeals                                             Hudson, C.J.
                                                  Took no part, Gaïtas, J.

JayCee Cooper,

                    Appellant,

vs.                                               Filed:  October 22, 2025
                                                  Office of Appellate Courts

USA Powerlifting,

                    Respondent,

USA Powerlifting Minnesota,

                    Respondent on Related Appeal (A23-0373).

                    _____

Jess Braverman, Sara Jane Baldwin, Christy L. Hall, Gender Justice, Saint Paul, Minnesota;

David E. Schlesinger, Riley L. Palmer, Nichols Kaster, PLLP, Minneapolis, Minnesota; and

Matthew A. Frank, Premo Frank PLLC, Minneapolis, Minnesota, for appellant.

Ansis V. Viksnins, Mark J. Carpenter, Mary Cate S. Cicero, Monroe Moxness Berg PA, Minneapolis, Minnesota, for respondent.

Keith Ellison, Attorney General, Rachel Bell-Munger, Office of the Minnesota Attorney General, Saint Paul, Minnesota, for amicus curiae Commissioner of the Minnesota Department of Human Rights.

Stanley N. Zahorsky, Zahorsky Law Firm, Minneapolis, Minnesota; and

William Bock III, Kroger Gardis & Regas, LLP, Indianapolis, Indiana, for amicus curiae 135 Female Athletes, Coaches, Sports Officials, and Parents of Female Athletes.

1

Kate Baxter-Kauf, Rachel Kitze Collins, Derek C. Waller, Lockridge Grindal Nauen PLLP, Minneapolis, Minnesota;

Sruti J. Swaminathan, American Civil Liberties Union Foundation, New York, New York; and

Teresa Nelson, David P. McKinney, Catherine Ahlin-Halverson, Alicia Granse, American Civil Liberties Union of Minnesota, Minneapolis, Minnesota, for amici curiae American Civil Liberties Union and American Civil Liberties Union of Minnesota.

Stanley N. Zahorsky, Zahorsky Law Firm, Minneapolis, Minnesota; and

William Bock III, Kroger Gardis & Regas, LLP, Indianapolis, Indiana, for amicus curiae Independent Council on Women's Sport.

Douglas P. Seaton, James V.F. Dickey, Allie K. Howell, Upper Midwest Law Center, Minnetonka, Minnesota, for amici curiae Independent Women's Forum and Payton McNabb.

Charles R. Shreffler, Dakota Law PLLC, Lakeville, Minnesota, for amici curiae Madison Kenyon, Chelsea Mitchell, and Beth Stelzer.

Nicholas J. Nelson, CrossCastle PLLC, Minneapolis, Minnesota; and

Jason Adkins, Minnesota Catholic Conference, Saint Paul, Minnesota, for amicus curiae Minnesota Catholic Conference.

Katharine Hannaher, Minnesota Coalition Against Sexual Assault, Saint Paul, Minnesota; and

Joshua D. Hughes, John T. Sullivan, Dorsey and Whitney LLP, Minneapolis, Minnesota, for amicus curiae Minnesota Coalition Against Sexual Assault.

Brian T. Rochel, Kitzer Rochel, PLLP, Minneapolis, Minnesota;

Christopher J. Moreland, MSB Employment Justice, LLP, Minneapolis, Minnesota;

Zane Umsted, Madia Law LLC, Minneapolis, Minnesota;

Emma Denny, HKM Employment Attorneys, LLP, Minneapolis, Minnesota;

Samuel Kramer, MacDonald Hoague & Bayless, Minneapolis, Minnesota; and

Leslie L. Lienemann, Celeste E. Culberth, Culberth & Lienemann, LLP, Saint Paul, Minnesota, for amici curiae National Employment Lawyers Association, Minnesota Chapter, and Employee Lawyers Association of the Upper Midwest.

Ava Marie M. Cavaco, Nigh Goldenberg Raso & Vaughn, Minneapolis, Minnesota;

Neema Sahni, J. Hardy Ehlers, Bree Peilen, Catherine Wettach, Covington & Burling LLP, Los Angeles, California, for amicus curiae National Women's Law Center.

CB Baga, Peter C. Hennigan, Carly J. Johnson, Maslon LLP, Minneapolis, Minnesota; and

Katherine S. Barrett Wiik, Saul Ewing LLP, Minneapolis, Minnesota, for amici curiae OutFront Minnesota and Minnesota Lavender Bar Association.

Claire Tralle, Tralle Law, Minneapolis, Minnesota; and

Tanya Pellegrini, Lawyering Project, San Francisco, California;

Jamila Johnson, Lawyering Project, New Orleans, Louisiana; and

Kyriaki Council, Lawyering Project, Denver, Colorado, for amicus curiae Transforming Families.

Renee K. Carlson, True North Legal, Saint Paul, Minnesota, for amici curiae True North Legal, National Legal Foundation, and Minnesota Family Council.

---

S Y L L A B U S

1.      Under the Minnesota Human Rights Act's (MHRA) protection of transgender individuals against discrimination based on sexual orientation, Minn. Stat. § 363A.03, subd. 44 (2018), a policy that expressly prohibits transgender women from competing in the women's division of a powerlifting competition is facially discriminatory and constitutes direct evidence of discrimination based on sexual orientation under the MHRA's prohibition against business discrimination and discrimination by places of public accommodation, found at Minn. Stat. §§ 363A.11, 363A.17 (2018).

2.      There is a genuine dispute of material fact as to whether seeking to ensure competitive fairness in an athletic competition satisfies the legitimate business purpose defense for sexual orientation and sex discrimination in business under Minn. Stat. § 363A.17 (2018) of the MHRA that forecloses partial summary judgment for the plaintiff as to liability on this claim.

3.      In the absence of any alleged statutory exemption or defense, the district court properly granted partial summary judgment for the plaintiff on the claim of sexual orientation discrimination in public accommodations.

4.      Our holding in *Goins v. West Group*, 635 N.W.2d 717 (Minn. 2001), is limited to claims of sexual orientation discrimination under the MHRA related to employment.

Affirmed in part, reversed in part, and remanded.

O P I N I O N

HUDSON, Chief Justice.

Appellant JayCee Cooper brought this transgender discrimination case against respondent USA Powerlifting raising claims exclusively under the Minnesota Human Rights Act (MHRA), Minn. Stat. §§ 363A.01–.44 (2018).[1]  Both parties agree that the Legislature has spoken clearly and that the MHRA prohibits discrimination based upon

---

[1]     The version of the MHRA in effect in 2018 governs the claims in this lawsuit. Unless specified otherwise, all citations to the MHRA in this opinion are to the 2018 version of the law.

transgender status.[2]  At the time relevant to this lawsuit, the MHRA did so under its prohibitions on discrimination on the basis of "sexual orientation," which the MHRA defined as including "having or being perceived as having a self-image or identity not traditionally associated with one's biological maleness or femaleness."  Minn. Stat. § 363A.03, subd. 44.  The Legislature has since amended the MHRA and added a separate "gender identity" provision.  *See* Act of May 19, 2023, ch. 52, art 19, § 48, 2023 Minn. Laws 1, 328 (codified at Minn. Stat. § 363A.03, subd. 50 (2024)).  The issue before us is whether, under the MHRA's prohibitions on discrimination in business and in public accommodations, USA Powerlifting's express prohibition on transgender women competing in the women's division of a powerlifting competition violated the MHRA.

Here, USA Powerlifting's expressly stated policy is that it "do[es] not allow male to female transgender athletes at all," that "trans women couldn't compete in the Women's division," and that "we do not allow male to female transgender athletes at all.  Full stop."  USA Powerlifting argues that its reasoning is that transgender women have an unfair competitive advantage in powerlifting due to their "male physiology."

The district court granted Cooper's motion for partial summary judgment on liability as to the claim of discrimination in public accommodations on the basis of sexual orientation and as to the claim of business discrimination on the basis of sexual orientation and sex.  The court of appeals reversed, concluding that there were genuine issues of

---

[2]      "Transgender status" is not a term used in the MHRA, but the term is used by both parties in their briefs to this court, as well as by the court of appeals in its opinion. Accordingly, we use the term throughout the opinion when discussing the gender identity at issue in this case.

5

material fact precluding partial summary judgment on both the business and public accommodation discrimination claims.

We affirm in part and reverse in part, concluding that the district court went too far in the scope of its grant of partial summary judgment to Cooper on the claim for discrimination in business, while also concluding that the court of appeals went too far in the scope of its reversal.

First, we reverse the court of appeals and agree with the district court that USA Powerlifting's policy expressly prohibiting transgender women from competing in the women's division of a powerlifting competition is facially discriminatory and constitutes direct evidence of discrimination based on sexual orientation under the MHRA's prohibition against discrimination in business and places of public accommodation.

That, however, does not end our analysis because the Legislature has created certain statutory defenses and exemptions that, if applicable, foreclose liability. We affirm the court of appeals and hold that the Legislature's inclusion of the legitimate business purpose defense in the MHRA—and the reasons USA Powerlifting offers for its policy—give rise to a genuine dispute of material fact as to whether USA Powerlifting's goal of ensuring fair competition satisfies that defense. Thus, the district court erred in granting partial summary judgment for Cooper on the claim for discrimination in business.

USA Powerlifting, however, does not argue that any statutory defense or exception similar to the legitimate business purpose defense exists in the MHRA as to discrimination in public accommodations. Nor has USA Powerlifting argued to this court that any other statutory defense or exemption applies here in the public accommodation context on a

6

claim of discrimination on the basis of sexual orientation. We therefore conclude that in the absence of any alleged statutory exemption or defense, the district court properly granted partial summary judgment for Cooper on the claim of sexual orientation discrimination in public accommodations.

Our opinion is narrowly drawn, based upon what the Legislature has chosen to prohibit under the MHRA and the specific facts and record in this case. That being the case, we also decline Cooper's request that we overrule our holding in *Goins v. West Group*, 635 N.W.2d 717, 720 (Minn. 2001), which involved a discrimination claim in an employment setting, but we clarify that *Goins*'s holding is limited to that context.

## FACTS

The following facts are either undisputed or are stated in the light most favorable to USA Powerlifting, the nonmoving party. *See Windcliff Ass'n, Inc. v. Breyfogle*, 988 N.W.2d 911, 916 (Minn. 2023) ("We review a district court's grant of summary judgment de novo and, in doing so, view the evidence in the light most favorable to the party against whom the district court granted summary judgment.").

Appellant JayCee Cooper is a transgender woman. Cooper was designated male at birth but struggled with her gender identity for years, and was eventually diagnosed with gender dysphoria around 2014, when she was about 26 years old. Since that time, she has taken spironolactone[3] as part of her treatment for gender dysphoria.

---

[3] It is undisputed that gender-affirming care and treatment for transgender women often includes the use of spironolactone, which blocks androgen receptors and reduces the production of testosterone.

Cooper, who describes herself as "a lifelong athlete," sought to participate in powerlifting competitions organized by respondent USA Powerlifting (also referred to as the USAPL). USA Powerlifting is the national governing body for the sport of powerlifting, which involves three main lifts: deadlift, squat, and bench press. In 2018, Cooper purchased an annual membership to compete in USA Powerlifting competitions in Minnesota. USA Powerlifting classifies competitors by gender, age, and weight. At competitions, lifters generally compete against others in their own division. Cooper was interested in competing in the women's open superheavyweight division, the highest women's weight category, with lifters weighing over approximately 185 pounds.

In October 2018, Cooper registered to compete in two women's powerlifting competitions that would take place in early 2019. As part of her registration, Cooper applied for a therapeutic use exemption (TUE) from USA Powerlifting's drug-free policy so that she could compete in the women's division of competitions while taking spironolactone to treat her gender dysphoria. Spironolactone is listed on the World Anti-Doping Agency's prohibited substance list, which USA Powerlifting has incorporated into its policies. Cooper submitted letters from her doctors that explained that she was using spironolactone appropriately and that it was an essential component of her treatment for gender dysphoria. Cooper's TUE application was the first time USA Powerlifting became aware that Cooper is a transgender woman.

When Cooper submitted her TUE application, USA Powerlifting did not have a formal written policy regarding transgender athletes, but the organization's internal email communications established a policy that expressly excluded transgender women from

8

competing in the women's division. On November 17, 2018, a USA Powerlifting executive committee member sent an internal email asking, "Do we allow male-to-female transgenders to compete as females?" and the president of the USA Powerlifting executive committee responded, "No, we do not." On December 5, 2018, the USA Powerlifting TUE Committee chair wrote to Cooper: "The TUE committee has reviewed your request for spirinolactone [sic]. That request has been denied. Male-to-female transgenders are not allowed to compete as females in our static strength sport as it is a direct competitive advantage." USA Powerlifting ultimately barred Cooper from competing in the women's division and revoked her competition card.

In January 2021, Cooper filed a complaint against USA Powerlifting, asserting multiple violations of the MHRA. The complaint included claims for sexual orientation and sex discrimination in public accommodations, and sexual orientation and sex discrimination in business. At the time of Cooper's complaint, the MHRA defined "sexual orientation" as including "having or being perceived as having a self-image or identity not traditionally associated with one's biological maleness or femaleness." Minn. Stat. § 363A.03, subd. 44. The parties do not dispute that the MHRA prohibited discrimination based on transgender status under this definition of sexual orientation. It is also undisputed that Cooper is a person protected under this definition.

Following discovery, the parties filed various motions, including cross-motions for summary judgment. Cooper asserted that she was entitled to partial summary judgment because "there is no factual dispute as to whether an illegitimate factor, namely [her] membership in a protected class, actually motivated [USA Powerlifting's] rejection of her

9

application to compete." USA Powerlifting's policy at the time of her application was that transgender women were not permitted to compete in the women's division of powerlifting competitions. Cooper cited the following evidence:

- An executive committee member's internal email asking, "Do we allow male-to-female transgenders to compete as females?" and the executive committee president's response, "No, we do not."

- In a deposition, the USA Powerlifting executive committee president stated, "The position of the organization was that trans women couldn't compete in the Women's division."

- In an email exchange on January 17, 2019, regarding a different athlete (i.e., not Cooper), the USA Powerlifting executive committee president wrote, "[W]e do not allow male to female transgender athletes at all. Full stop."

In its summary judgment briefing, USA Powerlifting did not dispute that its policy prohibited transgender women from competing in the women's division of powerlifting events. But USA Powerlifting argued that it did not exclude Cooper because of her transgender status. Instead, USA Powerlifting argued that it excluded Cooper because she had gone through puberty as a male and therefore had natural "strength advantages" and "performance advantages" that gave her an unfair competitive advantage over cisgender women athletes. In support of its motion, USA Powerlifting submitted expert reports that identified a "non-exhaustive list of sexually dimorphic differences between males and females," including males having "larger and denser muscle mass, reduced fat mass, different distributions of muscle."

As relevant here, the district court granted partial summary judgment in favor of Cooper on USA Powerlifting's liability for discrimination based on sexual orientation in

10

business and public accommodations, and discrimination based on sex in business. The district court explained that this case is "simplified significantly by the undisputed evidence that USAPL's policy, at all times relevant to this case and continuing to the present, is that male to female transgender persons are not allowed to compete in the female category." The district court concluded that "USAPL's decision begins and ends with but one factor— Cooper's protected status as a transgender woman," which was the only "basis for USAPL's decision." The district court reasoned, "[w]hatever USAPL's motives in adopting the policy it did, the actual policy is, on its face, discriminatory on the basis of sex and sexual orientation" because "[t]he protected status of sex and sexual orientation are the only basis for selection and application." Accordingly, the district court ruled that "the undisputed facts establish USAPL discriminated against Cooper in public accommodation 'because of' her sex and sexual orientation." Likewise, for discrimination in business, the district court ruled that "USAPL discriminated against Cooper in the basic terms, conditions, or performance of the contract between USAPL and Cooper 'because of' Cooper's sex and sexual orientation."

The district court thus concluded that partial summary judgment should be granted to Cooper unless there was an applicable statutory exemption from liability. The district court recognized that the MHRA provides that there is no liability for business discrimination if the discrimination is "because of a legitimate business purpose." Minn. Stat. § 363A.17(3). But the district court determined that USA Powerlifting's policy was not justified by a legitimate business purpose. The district court thus granted Cooper's

11

motion for partial summary judgment as to her claims of business discrimination because of sexual orientation and sex.

As to discrimination in public accommodations, the district court recognized that Minn. Stat. § 363A.24, subd. 2, provides the following limited exemption for an athletic team, program, or event:

> The provisions of section 363A.11 relating to sex, do not apply to restricting membership on an athletic team or in a program or event to participants of one sex if the restriction is necessary to preserve the unique character of the team, program, or event and it would not substantially reduce comparable athletic opportunities for the other sex.

The district court concluded that under the "plain language of subdivision 2," it "only applies" to public accommodation claims "relating to the protected status of sex and not to the protected status of sexual orientation." The district court thus denied Cooper's motion for partial summary judgment as to liability based on sex discrimination in public accommodations, ruling that "genuine factual issues remain" regarding the exemption in Minn. Stat. § 363A.24, subd. 2.[4] But the district court granted partial summary judgment for Cooper as to public accommodation discrimination on the basis of sexual orientation, based on its conclusion that the exemption was inapplicable.

In addition to granting in part Cooper's motion for partial summary judgment, the district court also ordered injunctive relief under the MHRA. The district court categorically ordered that "USAPL shall cease and desist from all unfair discriminatory

---

[4] The district court's denial of partial summary judgment to Cooper on her claim of public accommodation discrimination on the basis of sex, based upon genuine fact issues regarding the applicability of the exemption in Minn. Stat. § 363A.24, subd. 2, was not before the court of appeals, nor is it before us.

12

practices in public accommodations because of sexual orientation." The district court also ordered USA Powerlifting to submit a revised policy that would comply with the MHRA.[5] USA Powerlifting sought interlocutory review. *See* Minn. R. Civ. App. P. 103.03(b) (stating that an appeal may be taken to the court of appeals from an order granting an injunction).

In a split decision, the court of appeals reversed the district court's grant of Cooper's motion for partial summary judgment on the three claims and its orders for injunctive relief. *Cooper v. USA Powerlifting*, 5 N.W.3d 689, 693–94 (Minn. App. 2024). First, the court of appeals addressed the claims of discrimination based on sexual orientation in a place of public accommodation and in business. The court of appeals stated that the "key question" was whether Cooper's transgender status "actually motivated USAPL's decision to exclude her from the women's division of its competitions." *Cooper*, 5 N.W.3d at 699. The court of appeals noted that USA Powerlifting did not "admit or concede that it excluded Cooper . . . because of her sexual orientation," and that USA Powerlifting "consistently maintained that its decision was not motivated by Cooper's transgender status." *Id.* at 699 n.4. Because it found that Cooper did not rely on direct evidence but rather on circumstantial evidence, the court of appeals applied the *McDonnell Douglas* burden-

---

[5]     USA Powerlifting later submitted a proposed policy that would allow a transgender woman to compete in the women's division if she declared her gender to be female, had conforming government identification, and maintained a testosterone level below a certain amount. At a hearing on the proposed policy, the district court ruled from the bench that the proposed policy did not comply with the MHRA and enjoined USA Powerlifting from holding events in Minnesota and selling memberships to Minnesota residents until it submitted a policy that complied with the MHRA. This proposed policy is not before us.

shifting analysis. *Id.* at 702. The court of appeals concluded that there were genuine issues of material fact with respect to Cooper's claims of discrimination based on sexual orientation because a fact-finder could find that USA Powerlifting excluded Cooper from the women's division because of her "male physiology," rather than her transgender status. *Id.* at 704. The court of appeals also addressed this court's opinion in *Goins v. West Group*, 635 N.W.2d 717 (Minn. 2001), in which a transgender woman alleged employment discrimination based on sexual orientation because her employer did not allow her to use the women's restrooms at her workplace, reasoning that the opinion "tends to corroborate our conclusion that Cooper does not have direct evidence of discrimination based on sexual orientation." *Cooper*, 5 N.W.3d at 704–05.

The court of appeals also concluded that there were genuine issues of material fact with respect to USA Powerlifting's legitimate business purpose defense to Cooper's claims of sex and sexual orientation discrimination in business. The court of appeals determined that USA Powerlifting's asserted reason for excluding Cooper—that "she has male physiology, which would give her an unfair competitive advantage over athletes with female physiology"—was a non-discriminatory reason.[6] *Id.* at 706.

The dissent at the court of appeals concluded that the district court properly granted partial summary judgment in favor of Cooper on her claim of sexual orientation discrimination in public accommodations and properly enjoined USA Powerlifting from

---

[6]     Based on the court of appeals' holdings reversing the grant of partial summary judgment for Cooper, it concluded that "there is no legal basis for injunctive relief." *Cooper*, 5 N.W.3d at 708.

continuing to engage in illegal discrimination. *Id.* at 708. The dissent determined that USA Powerlifting's proffered rationale that it excluded Cooper "because the 'biological maleness' of transgender women affords a competitive advantage" did not make its action any less discriminatory under the MHRA. *Id.* at 709. In sum, the dissent concluded that "the undisputed direct evidence establishes that USA [Powerlifting] violated the MHRA by intending to exclude and then actually excluding Cooper from competition eligibility because she is a transgender person." *Id.* at 712.

Cooper sought further review, which we granted. In addition to challenging the court of appeals' reversal of partial summary judgment for Cooper on her claims, Cooper also sought review as to whether we should overrule *Goins*.

## ANALYSIS

In analyzing Cooper's claims under the MHRA in this summary judgment posture, we first address whether Cooper's membership, as a transgender individual, in a protected class based on sexual orientation actually motivated USA Powerlifting's decision to exclude Cooper from the women's division of its competitions for purposes of the claims of discrimination in business and public accommodations. Even if so, partial summary judgment for Cooper on a claim of discrimination is only appropriate in the absence of any potentially applicable statutory defense or exemption. We thus next address the applicability of the legitimate business purpose defense to the claims of discrimination in business and then turn to whether USA Powerlifting has raised the applicability of any statutory defense or exemption in the public accommodation context as to discrimination

15

on the basis of sexual orientation. Finally, we address our holding in *Goins*, 635 N.W.2d at 720.

We review a district court's summary judgment decision de novo. *Henry v. Indep. Sch. Dist. No. 625*, 988 N.W.2d 868, 880 (Minn. 2023). A district court "shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Minn. R. Civ. P. 56.01. In reviewing a district court's summary judgment decision, "we examine whether there are any genuine issues of material fact and whether the district court properly applied the law." *Henry*, 988 N.W.2d at 880. We view the evidence in the light most favorable to the nonmoving party and resolve all doubts and factual inferences against the moving party. *Id.* Additionally, the construction of the MHRA raises a question of statutory interpretation that we review de novo. *Id.*

## I.

We first consider Cooper's MHRA claims for sexual orientation discrimination.[7] Cooper grounds her claims in the MHRA's prohibitions on discrimination in business and in public accommodations. As to business discrimination, the MHRA provides that "[i]t is an unfair discriminatory practice for a person engaged in a trade or business or in the provision of a service . . . to intentionally refuse to do business with, to refuse to contract with, or to discriminate in the basic terms, conditions, or performance of the contract

---

[7] We conclude in Part IV of this opinion that *Goins*'s holding that "an employer's designation of employee restroom use based on biological gender is not sexual orientation discrimination in violation of the MHRA," 635 N.W.2d at 720, is distinguishable and does not apply to Cooper's case.

16

because of a person's . . . sexual orientation . . . unless the alleged refusal or discrimination is because of a legitimate business purpose." Minn. Stat. § 363A.17(3). As to public accommodations, the MHRA provides that "[i]t is an unfair discriminatory practice . . . to deny any person the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation because of . . . sexual orientation."[8] Minn. Stat. § 363A.11, subd. 1(a)(1).

The version of the MHRA in effect at the time of the events here, and therefore governing this case, defined "sexual orientation" as including "having or being perceived as having a self-image or identity not traditionally associated with one's biological maleness or femaleness." Minn. Stat. § 363A.03, subd. 44. The parties agree that discrimination based on transgender status is discrimination based on sexual orientation under the 2018 version of the MHRA and that Cooper is a protected member of that class.[9] Thus, the Legislature has directed that a person or entity that discriminates on the basis of transgender status violates the MHRA unless a statutory defense or exemption applies.

---

[8] The MHRA defines "[p]lace of public accommodation" as "a business, accommodation, refreshment, entertainment, recreation, or transportation facility of any kind, whether licensed or not, whose goods, services, facilities, privileges, advantages or accommodations are extended, offered, sold, or otherwise made available to the public." Minn. Stat. § 363A.03, subd. 34. The parties do not dispute that USA Powerlifting and the competitions it hosts meet this definition.

[9] The Legislature has since amended this section to include gender identity as a separate protected status. *See* Minn. Stat. § 363A.03, subd. 50 (2024). The statute now defines "gender identity" as "a person's inherent sense of being a man, woman, both, or neither. A person's gender identity may or may not correspond to their assigned sex at birth or to their primary or secondary sex characteristics. A person's gender identity is not necessarily visible to others." However, because this case is based on events that occurred in 2018 and 2019, the 2018 version of the statute applies.

17

Subject to statutory exceptions established by the Legislature, *see* Part II, USA Powerlifting discriminated against Cooper on the basis of sexual orientation if her transgender status "actually motivated" USA Powerlifting's decision to exclude her from women's events. *LaPoint v. Family Orthodontics, P.A.*, 892 N.W.2d 506, 513–14 (Minn. 2017). To satisfy this requirement, Cooper must demonstrate that her transgender status was a "substantial causative factor" in the decision. *Id.* A "finding of animus, in the sense of dislike or hostility, is not necessary for a forbidden criterion to 'actually motivate' a decision." *Id.* at 517. It is well-established that one way in which "[d]iscrimination plaintiffs may prove discriminatory intent [is] by direct evidence." *Hoover v. Norwest Private Mortg. Banking*, 632 N.W.2d 534, 542 (Minn. 2001).

Direct evidence of discrimination establishes that the discrimination was "purposeful, intentional, or overt." *Hanson v. Dep't of Nat. Res.*, 972 N.W.2d 362, 373 (Minn. 2022) (citations omitted) (internal quotation marks omitted). We have recognized, for example, that direct evidence of discrimination is shown "where an employer announces he will not consider females for positions." *Id.* (citations omitted) (internal quotation marks omitted). Likewise, other courts have found direct evidence of discriminatory motive where a statement or policy is discriminatory on its face. For instance, the U.S. Supreme Court in *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 120–21 (1985), concluded that a collective bargaining agreement constituted direct evidence of age discrimination because the agreement allowed airline captains displaced for any reason other than age to "bump" a less senior flight engineer. In *Febres v. Challenger Caribbean Corp.*, 214 F.3d 57, 61 (1st Cir. 2000), the First Circuit determined

that there was direct evidence of discriminatory motive where a manager admitted that age was one of three criteria used to determine which employees would be retained and which would not. And in *Hardin v. Stynchcomb*, 691 F.2d 1364, 1369 n.16 (11th Cir. 1982), the Eleventh Circuit concluded that there was direct evidence of discrimination where a sheriff stated that he would not consider hiring women for seven open deputy positions. *Cf. Cengr v. Fusibond Piping Sys., Inc.*, 135 F.3d 445, 451–52 (7th Cir. 1998) (finding no direct evidence of discriminatory motive where the employer did not state that termination was based on age and where employer's statements did not relate to his motivation as the decisionmaker in terminating employee).

In the absence of direct evidence, discrimination plaintiffs may alternatively prove discriminatory intent by using circumstantial evidence in accordance with the three-part burden-shifting test set out by the U.S. Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Hoover*, 632 N.W.2d at 542; *see Anderson v. Hunter, Keith, Marshall & Co., Inc.*, 417 N.W.2d 619, 623 (Minn. 1988) (recognizing that "we have adopted the *McDonnell Douglas* analysis as an aid to resolving cases claiming disparate treatment" under the MHRA). "Under this framework, a plaintiff must first make out a prima facie case of discrimination." *Hansen v. Robert Half Int'l, Inc.*, 813 N.W.2d 906, 918 (Minn. 2012) (citation omitted). "Once established, the burden then shifts to the [defendant] to articulate a legitimate and nondiscriminatory reason for the adverse . . . action. The burden then shifts again to the plaintiff to put forward sufficient evidence to demonstrate that the [defendant's] proffered explanation was pretextual." *Id.* (citations omitted). However, when "the evidence establishes that [the defendant] openly

19

discriminates against an individual it is not necessary to apply the mechanical formula of *McDonnell Douglas* to establish an inference of intentional discrimination; the showing has already been made directly." *Ramirez v. Sloss*, 615 F.2d 163, 168 (5th Cir. 1980).

On appeal to this court, Cooper maintains that she has presented direct and dispositive evidence of discrimination and so there is no need to apply the *McDonnell Douglas* framework. She argues that USA Powerlifting's policy categorically barring transgender women from women's events is facially discriminatory and constitutes direct evidence of discriminatory intent.

In response, USA Powerlifting asserts that its policy "explains that male to female transgender powerlifters are excluded from the women's division because of their male physiology; the exclusion is not because of their sex, sexual orientation, gender identity, or any other protected characteristic." USA Powerlifting, quoting language from its website at the time of the litigation, says that its policy "specifically identifies the 'significant advantages' in 'body and muscle mass, bone density, bone structure, and connective tissue' that are obtained through male puberty" which are "not eliminated by reduction of testosterone through hormone replacement therapy." In sum, USA Powerlifting maintains that Cooper did not provide direct evidence of discriminatory motive or intent to show that USA Powerlifting intentionally discriminated against her because of her transgender status.

We agree with Cooper that USA Powerlifting's policy is discriminatory on its face; there is therefore no genuine dispute that USA Powerlifting discriminated against Cooper because of her transgender status. Although USA Powerlifting lacked a formal, written transgender participation policy at the time of its initial communication with Cooper, the

20

record establishes—and the parties do not dispute—that USA Powerlifting's policy at the time of the decision was to categorically exclude transgender women from competing in the women's division. As noted above, USA Powerlifting expressly said that it "do[es] not allow male to female transgender athletes at all," that "trans women couldn't compete in the Women's division," and that "we do not allow male to female transgender athletes at all. Full stop." Here, USA Powerlifting's policy explicitly bars all transgender women from competing in the women's division. USA Powerlifting conceded as much in its opening brief at the court of appeals by stating: "Of course, the USAPL transgender policy is 'facially discriminatory' in the most generic sense of that term because it precludes transgender women from competing in the women's division.'" Because USA Powerlifting's policy is discriminatory on its face, this policy constitutes direct evidence of discriminatory motive.

Significantly, there is no individualized nuance to USA Powerlifting's position; it assumes that every transgender woman has a competitive advantage in the women's division. There is no assessment of whether that is true in a particular case. As the district court said in its order, USA Powerlifting's decision "begins and ends with but one factor—Cooper's protected status as a transgender woman." We conclude that USA Powerlifting's policy is discriminatory on its face. Accordingly, the *McDonnell Douglas* framework is inapplicable. *See Hoover*, 632 N.W.2d at 542 ("Discrimination plaintiffs may prove discriminatory intent by direct evidence or by using circumstantial evidence in accordance with the three-part burden-shifting test set out by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*."); *see also Trans World Airlines, Inc.*, 469 U.S. at

21

121 ("[T]he *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination.").

By claiming that it did not discriminate against Cooper because of her transgender status, USA Powerlifting implies that it did not exclude Cooper out of animus toward transgender people. But "a finding of animus, in the sense of dislike or hostility, is not necessary for a forbidden criterion to actually motivate a[] . . . decision." *LaPoint*, 892 N.W.2d at 517. Further, even if USA Powerlifting did not exclude Cooper out of animus, USA Powerlifting has nonetheless discriminated against Cooper because a criterion forbidden by the Legislature—transgender status—clearly motivated USA Powerlifting's decision, as evident in the explicit terms of its policy. We have concluded that an unfair discriminatory practice can exist even if benevolent or neutral considerations motivated the practice. In *Minnesota Mining & Mfg. Co. v. State*, 289 N.W.2d 396, 397–400 (Minn. 1979), for instance, we concluded that an employer's policy that excluded pregnancy-related disabilities from its income maintenance plan was per se sex discrimination in violation of the MHRA, even though the employer was seemingly motivated by cost. Notably, the procedural posture in that case was also similar, in that our conclusion resulted in affirming the partial grant of summary judgment to the plaintiffs in that case. *Id.* at 398–400, 402. And in *Kraft, Inc. v. State*, 284 N.W.2d 386, 387 (Minn. 1979), we concluded that a policy that discriminated based on marital status violated the MHRA despite the employer's underlying goal of avoiding nepotism. *See also Int'l Union v. Johnson Controls, Inc.*, 499 U.S. 187, 199–200 (1991) (concluding that an employer's desire to protect fetal health did not change the fact that its policy applied only

22

to women who could become pregnant, treated them differently, and was therefore discriminatory, and ultimately rejecting the applicability of a statutory defense, explaining that "[w]hether an employment practice involves disparate treatment through explicit facial discrimination does not depend on why the employer discriminates but rather on the explicit terms of the discrimination.").

Because USA Powerlifting's facially discriminatory policy provides direct evidence of discriminatory motive, there is no genuine issue of material fact as to whether Cooper's transgender status actually motivated USA Powerlifting's decision to prohibit Cooper from competing. We therefore reverse the part of the court of appeals' decision on this issue.

This does not, however, automatically compel partial summary judgment for Cooper as to liability on these claims. Granting partial summary judgment as to liability for Cooper is only appropriate if there are no statutory defenses or exemptions that are potentially applicable to Cooper's claims of business discrimination and discrimination in public accommodations.[10]

---

[10] We note that this is consistent with the district court's approach to the claim of sex discrimination in public accommodations, where it concluded: "Cooper is entitled to summary judgment on the issue whether USAPL committed unfair and discriminatory practices with respect to public accommodation because of sex, but is DENIED IN PART because genuine factual issues remain whether Minnesota Statutes section 363A.24 subdivision 2 exempts USAPL from public accommodation sex discrimination liability." The district court's conclusion that summary judgment for Cooper was inappropriate as to that claim was not before the court of appeals, and neither is that issue before us.

II.

We turn now to whether there is any statutory defense or exemption that precludes partial summary judgment on the issue of liability for Cooper on her claims of sexual orientation and sex discrimination in business.[11]  The MHRA provides that

> It is an unfair discriminatory practice for a person engaged in a trade or business or in the provision of a service . . . to intentionally refuse to do business with, to refuse to contract with, or to discriminate in the basic terms, conditions, or performance of the contract because of a person's . . . sex [or] sexual orientation . . . unless the alleged refusal or discrimination is because of a legitimate business purpose.

Minn. Stat. § 363A.17(3).  Discrimination claims in business are subject to a "legitimate business purpose" defense.

The MHRA does not define "legitimate business purpose" in the context of section 363A.17(3), and we have not interpreted this phrase under the MHRA.  In interpreting the MHRA's legitimate business purpose defense, we find useful other jurisdictions' discussion of the bona fide occupational qualification (BFOQ) defense to employment discrimination under Title VII.  The BFOQ defense countenances discrimination based on religion, sex, or national origin "in those certain instances where religion, sex, or national origin is a bona fide occupational qualification reasonably necessary to the normal operation of that particular business or enterprise."  42 U.S.C.

---

[11]    USA Powerlifting's opening brief to the court of appeals did not raise—and the court of appeals did not address—the district court's conclusion that Cooper was entitled to partial summary judgment as to whether USA Powerlifting had committed unfair and discriminatory practices with respect to business because of sex.  Accordingly, we do not address that issue either.  In contrast, the applicability of the legitimate business purpose defense was reached by the court of appeals and is before our court on grounds of both sexual orientation and sex discrimination.

24

§ 2000e-2(e). In cases involving sex discrimination, "it is impermissible under Title VII to refuse to hire an individual woman or man on the basis of stereotyped characterizations of the sexes, and an employer must have a basis in fact for its belief that gender discrimination is reasonably necessary—not merely reasonable or convenient—to the normal operation of its business." *Everson v. Mich. Dep't of Corr.*, 391 F.3d 737, 748 (6th Cir. 2004) (citations omitted) (internal quotation marks omitted).

Additionally, "discrimination based on sex is valid only when the essence of the business operation would be undermined by not hiring members of one sex exclusively." *Diaz v. Pan Am. World Airways, Inc.*, 442 F.2d 385, 388 (5th Cir. 1971).[12] Furthermore, customers' preferences and prejudices do not provide a valid business reason to discriminate. *Id.* at 389 ("[I]t would be totally anomalous if we were to allow the preferences and prejudices of the customers to determine whether the sex discrimination was valid. Indeed, it was, to a large extent, these very prejudices [Title VII] was meant to overcome."). In short, we conclude that to establish a "legitimate business purpose" under § 363A.17(3), a business must show that the discriminatory policy is reasonably necessary for it to achieve its central mission and there are no reasonable alternatives to the discriminatory policy. Further, a discriminatory policy that is based on stereotypes cannot

---

[12]     In *Dothard v. Rawlinson*, for instance, the U.S. Supreme Court concluded that a prison employer with a male-only prison guard policy had successfully asserted a BFOQ defense because "[t]he likelihood that inmates would assault a woman because she was a woman would pose a real threat not only to the victim of the assault but also to the basic control of the penitentiary and protection of its inmates and the other security personnel," and so "[t]he employee's very womanhood would thus directly undermine her capacity to provide the security that is the essence of a correctional counselor's responsibility." 433 U.S. 321, 336 (1977).

support a legitimate business purpose. In addition, the fact that the business's customers may decline to patronize the business in the absence of the discriminatory policy is not a "legitimate business purpose."

In so concluding, we disagree with the court of appeals and USA Powerlifting that a "legitimate business purpose" under the MHRA is synonymous with a "legitimate and nondiscriminatory reason" under the *McDonnell Douglas* test. A "legitimate and nondiscriminatory reason" is the second prong of the *McDonnell Douglas* burden-shifting framework, which is relevant only when a discrimination plaintiff seeks to prove discriminatory intent with circumstantial evidence. *Hansen*, 813 N.W.2d at 918. The legitimate and nondiscriminatory reason is a lower bar than the legitimate business purpose because, in the *McDonnell Douglas* framework, the legitimate and nondiscriminatory reason is not the final step of the analysis—it simply puts a burden of production on the employer to rebut the employee's prima facie discrimination claim with lawful reasons for their action. *See Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 257 (1981) (stating that "the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus.").

A legitimate business purpose, by contrast, is relevant when a "person engaged in a trade or business or in the provision of a service . . . intentionally refuses to do business with" another "because of" that person's protected status. Minn. Stat. § 363A.17(3). The legitimate business purpose defense applies when the discriminatory motive has been established. In this context, the parties agree that the defendant had a discriminatory

26

motive—it is now up to the defendant to show that this discrimination is because of a legitimate business purpose. In other words, the two terms arise out of different contexts. Accordingly, the legitimate business purpose defense should be interpreted independently from the *McDonnell Douglas* framework's "legitimate and nondiscriminatory reason."

On appeal to this court, Cooper argues that USA Powerlifting has not put forward any material evidence supporting a legitimate business purpose defense. She argues that USA Powerlifting has never pointed to a legitimate *business* purpose because (1) allowing transgender women to compete in women's events does not change the nature of the sport, (2) allowing transgender women in women's events does not prevent USA Powerlifting from continuing to run women's powerlifting events, and (3) USA Powerlifting cannot claim it is being singled out or disadvantaged because *all* powerlifting organizations in Minnesota must follow the same law. Additionally, Cooper states that "USAPL cannot fall back on customer preferences or prejudices, as this is not a valid business reason to discriminate."

In response, USA Powerlifting claims that its transgender policy "explicitly stated that transgender women powerlifters enjoy 'increased body and muscle mass, bone density, bone structure, and connective tissues,' " and that its "interpretation of fair play is based on the unique considerations of powerlifting as a strength sport." USA Powerlifting claims that providing fair competition opportunities for similarly situated athletes is a "legitimate business reason for a sports federation that wants to sell memberships to and receive competition fees from participants who have sufficient confidence in the integrity of the competition such that they will invest time, effort, and money."

27

Here, as with a defendant asserting a statutory BFOQ defense, USA Powerlifting bears the burden of showing that its decision to prohibit transgender women from competing in the women's division was because of a legitimate business purpose, which cannot be based in stereotypes. *See Lewis v. Remmele Eng'g, Inc.*, 314 N.W.2d 1, 3 (Minn. 1981) (establishing that an employer must provide a "factual basis" to assert a BFOQ defense); *see also Everson*, 391 F.3d at 748 ("[A]n employer must have a basis in fact for its belief that gender discrimination is reasonably necessary—not merely reasonable or convenient—to the normal operation of its business." (citation modified) (citations omitted) (internal quotation marks omitted)). It would be impermissible for USA Powerlifting to prohibit all transgender women from competing in the women's division based on a stereotype that all transgender women possess an unfair competitive advantage. *See Everson*, 391 F.3d at 748 ("[I]t is impermissible under Title VII to refuse to hire an individual woman or man on the basis of stereotyped characterizations of the sexes."). A blanket ban against a protected group constitutes a legitimate business purpose only if the blanket ban is reasonably necessary to achieve the central mission of the defendant's business and no reasonable alternatives to the discrimination exist. *See Johnson Controls*, 499 U.S. at 203 ("[I]n order to qualify as a BFOQ, a job qualification must relate to the essence, or to the central mission of the employer's business." (citations omitted) (internal quotation marks omitted)); *see also Everson*, 391 F.3d at 749 ("[E]mployers asserting a BFOQ defense [carry] the burden of establishing that no reasonable alternatives exist to discrimination . . . ."). Therefore, USA Powerlifting must establish that its blanket policy of prohibiting all transgender women from competing in the women's division is

28

reasonably necessary for it to achieve the central mission of its business, that no reasonable alternatives to the discrimination exist, and that this policy is not based on stereotypes about transgender women.

To demonstrate that their policy is not based on stereotypes of transgender women, USA Powerlifting submitted substantial expert testimony and scientific evidence that transgender women who have gone through male puberty have a significant strength advantage. At the same time, Cooper asserts that allowing transgender women to compete in the women's division would not change the nature of the sport of powerlifting, nor would it prevent USA Powerlifting from continuing to host women's powerlifting events. On Cooper's motion for summary judgment, viewing the facts in the light most favorable to USA Powerlifting, as we must, we conclude that there is a genuine dispute of material fact as to whether USA Powerlifting's blanket policy has a legitimate business purpose.

Because there is a genuine dispute of material fact as to whether USA Powerlifting has a legitimate business purpose for excluding transgender women from the women's division, we affirm the part of the court of appeals' decision that reversed the district court's grant of partial summary judgment to Cooper on her claims of sexual orientation and sex discrimination in business.

## III.

We next turn to whether there are any similar statutory defenses or exemptions that preclude partial summary judgment for Cooper on her claim of sexual orientation discrimination in public accommodations. The Legislature, however, has explicitly limited the legitimate business purpose defense to discrimination in business. Minn. Stat.

29

§ 363A.17(3). No similar defense or exemption exists in the MHRA with respect to discrimination in public accommodations. *See* Minn. Stat. §§ 363A.11, 363A.24. And "[w]e cannot add words or meaning to a statute that were intentionally or inadvertently omitted." *Rohmiller v. Hart*, 811 N.W.2d 585, 590 (Minn. 2012) (citation omitted); *see also In re Benson*, 12 N.W.3d 711, 717 (Minn. 2024) ("[I]f the Legislature had wanted to make the right to counsel unwaivable, it could have done so explicitly—just as it has in other statutes.").

The Legislature has enacted an exemption based on public accommodations for an athletic team, program, or event. That exemption provides that:

> The provisions of section 363A.11 relating *to sex*, do not apply to restricting membership on an athletic team or in a program or event to participants of one sex if the restriction is necessary to preserve the unique character of the team, program, or event and it would not substantially reduce comparable athletic opportunities for the other sex.

Minn. Stat. § 363A.24, subd. 2 (emphasis added). The district court concluded that "the plain language of subdivision 2 only applies to claims relating [to] public accommodation discrimination relating to the protected status of sex and not to the protected status of sexual orientation." And USA Powerlifting makes no argument that the exemption in Minn. Stat. § 363A.24, subd. 2, related to *sex discrimination*, also extends to *sexual orientation discrimination*.[13]

---

[13] Because neither party has challenged the district court's rulings as to the scope and applicability of the statutory exemption in Minn. Stat. § 363A.24, we decline to do so here. *See Pfeil v. St. Matthews Evangelical Lutheran Church of the Unaltered Augsburg Confession of Worthington*, 877 N.W.2d 528, 535 (Minn. 2016) (declining to address an issue that was not briefed or argued). For the same reasons, we likewise decline to pass

Accordingly, because USA Powerlifting does not identify any statutory defense or exemption applicable to Cooper's claim for sexual orientation discrimination in public accommodations,[14] we reinstate the district court's grant of Cooper's motion for partial summary judgment as to liability on her claim of public accommodation discrimination because of sexual orientation.

IV.

Finally, we address our decision in *Goins*, 635 N.W.2d at 720. In *Goins* we held that "an employer's designation of employee restroom use based on biological gender is not sexual orientation discrimination in violation of the MHRA." *Goins v. West Group*, 635 N.W.2d 717, 720 (Minn. 2001). Cooper asks us to overrule *Goins*, arguing that it is "an outlier undermining Minnesota's otherwise strong commitment to eradicating discrimination in important areas of life." Several amici similarly argue that *Goins* wrongly applied the MHRA and incorrectly limited the scope of its protections.

We have said that "[t]he doctrine of stare decisis directs us to adhere to our former decisions in order to promote the stability of the law and the integrity of the judicial process. We are extremely reluctant to overrule our precedent absent a 'compelling reason.' " *Schuette v. City of Hutchinson*, 843 N.W.2d 233, 238 (Minn. 2014) (citations omitted). Furthermore, "[t]he doctrine of stare decisis has special force in the area of

___

upon the scope and applicability of any of the other statutory exemptions to unfair discriminatory practices contained in Minn. Stat. §§ 363A.20–.26.

[14] USA Powerlifting also does not dispute that it, and the competitions it hosts, meet the MHRA's definition of a place of public accommodation. *See* Minn. Stat. § 363A.03, subd. 34.

31

statutory interpretation because the Legislature is free to alter what we have done." *Id.* (citation omitted). Although this court is "not bound to unsound principles, following precedent promotes stability, order, and predictability in the law." *Fleeger v. Wyeth*, 771 N.W.2d 524, 529 (Minn. 2009) (citations omitted) (internal quotation marks omitted).

Cooper's case does not arise in an employment setting, and so *Goins* is distinguishable. *See Goins*, 635 N.W.2d at 720. Because the question of whether we need to overrule *Goins* to reach our conclusion in this case is not squarely before us, we decline to overrule *Goins* at this time. We stress, however, that our holding in *Goins* is limited to claims of sexual orientation discrimination under the MHRA related to employment and does not extend to the claims of discrimination in public accommodations or in business raised here under the MHRA.

\* \* \*

In summary, as all parties agree, the MHRA protects persons of transgender status against discrimination. At the time relevant to this lawsuit, this protection was afforded by the MHRA's prohibitions on discrimination on the basis of sexual orientation. And it is undisputed that the appellant, JayCee Cooper, falls within this protected class. Thus, under the MHRA's prohibitions on discrimination, USA Powerlifting was not permitted to deny Cooper the full and equal enjoyment of its place of public accommodation because of her transgender status nor engage in business discrimination as to Cooper because of her transgender status, subject to any statutory defense or exemption to liability for such conduct.

Applying this statutory framework within the summary judgment posture of this case, we agree with the court of appeals that the district court went too far in granting partial summary judgment for Cooper that USA Powerlifting engaged in business discrimination. We also conclude, however, that the court of appeals went too far in reversing the district court's grant of partial summary judgment for Cooper that USA Powerlifting engaged in public accommodation discrimination.

Here, USA Powerlifting has conceded in this litigation that its transgender policy is "facially discriminatory" because it precludes transgender women from competing in the women's division. USA Powerlifting expressly stated that its policy is that "trans women couldn't compete in the Women's division," and that "[USAPL] do[es] not allow male to female transgender athletes at all. Full stop." There is no genuine issue of material fact on the question of whether USA Powerlifting was "actually motivated" by Cooper's transgender status when it prohibited her from competing.

USA Powerlifting is not liable to Cooper, however, if its conduct falls under any of the statutory defenses or exemptions the Legislature has included within the MHRA. As to business discrimination, the MHRA specifically creates an exemption from liability if the "refusal or discrimination is because of a legitimate business purpose." Minn. Stat. § 363A.17(3). We conclude that USA Powerlifting has raised genuine issues of material fact precluding summary judgment for Cooper as to the legitimate business purpose defense, based on USA Powerlifting's claim that fair competition opportunities for similarly situated athletes is a legitimate business reason, that its interpretation of fair play is based on unique considerations of powerlifting, and that it has submitted expert reports

33

and scientific evidence in the record to support its claim that transgender women powerlifters enjoy "increased body and muscle mass, bone density, bone structure, and connective tissues." Accordingly, we affirm the court of appeals' reversal of the district court's grant of partial summary judgment for Cooper as to her claims of discrimination in business.

USA Powerlifting has identified no defense that applies to Cooper's claim of discrimination in public accommodations. The Legislature did not make a legitimate business purpose a defense to public accommodation claims. Further, USA Powerlifting did not argue that the statutory exemption in Minn. Stat. § 363A.24 that allows restricting membership on an athletic team or in a program or event to participants of one sex applies to sexual orientation as well. Because we do not reach issues that are not before us, we do not address the interpretation, scope, or application of the statutory exemption based on public accommodations nor any of the other exemptions to unfair discriminatory practices contained in the MHRA. Here, in the absence of any argument by USA Powerlifting that a statutory exemption or defense applies to discrimination in public accommodations on the basis of sexual orientation, it was appropriate for the district court to grant partial summary judgment to Cooper as to liability on that claim.

Lastly, we decline Cooper's invitation for us to overrule our decision in *Goins v. West Group*, 635 N.W.2d 717, 720 (Minn. 2001). Principles of stare decisis counsel against us doing so, and that case—arising in the employment context—is distinguishable from the circumstances here.

**CONCLUSION**

For the foregoing reasons, we reverse the decision of the court of appeals in part, affirm in part, and remand to the district court for proceedings consistent with this opinion.

Affirmed in part, reversed in part, and remanded.


GAÏTAS, J., took no part in the consideration or decision of this case.